Degenhart v. Gent.

---

## Charles Degenhart, Impleaded, etc., v. Charles Gent, Adm'r, etc.

1. INSTRUCTIONS—*Based upon the Allegations of the Declaration.*— In an action for damages resulting from the death of a person from negligence, when a general demurrer to the declaration is overruled and the defendant pleads over, it is not error to instruct the jury, if they believe from the evidence that the deceased, while in the exercise of ordinary care, lost his life through the negligence of the defendant as charged in the declaration, the plaintiff is entitled to recover. .

2. EXPERT WITNESSES—*Who Are Competent as Such.*—Persons who

have experience in excavating the earth and in protecting themselves against its caving, may have such a peculiar knowledge of the character of soils and of the best methods of protection, not acquired by common experience and observation, as will render them competent as expert witnesses.

3. MASTER AND SERVANT—*When a Safer Mode of Doing the Business Might Have Been Adopted.*—If a servant, knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury.

**Trespass on the Case.**—Death from negligence. Appeal from the City Court of Alton; the Hon. SILAS COOK, Judge,.presiding. Heard in this court at the February term, 1901. Reversed and remanded. Opinion filed September 4, 1901.

**Statement.**—Appellee, administrator of the estate of Harry Lovell, deceased, commenced this action against the appellant, Charles Degenhart, and the City of Alton, to recover $5,000 for the alleged negligence of the defendants, whereby Harry Lovell was killed. At the close of plaintiff's evidence he dismissed as to the city of Alton.

Appellant, Degenhart, had contracted with the city of Alton to construct a sewer in one of its streets. The deceased and others were employed by Degenhart in digging the sewer. The negligence charged is for failure to protect the sides of the sewer by bracing or planking so as to prevent the earth from caving in.

Four men were working together at the same place, the deceased and two others at the bottom of the sewer, which was about twelve feet deep, digging and throwing the dirt on a platform, from which the fourth man threw it to the surface. Two were killed and the other two injured. Verdict and judgment for appellee for $1,500, from which Degenhart appeals.

JOHN F. McGINNIS and DUNNEGAN & LEVERETT, attorneys for appellant.

JOHN J. BRENHOLT, attorney for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Counsel for appellant claim error in allowing witnesses for appellee to testify as experts, upon the ground that the matter about which they testified was " within the range of common experience and observation." The claim is not well founded. Persons having experience in excavating, and in protecting against the caving in of earth, may have peculiar knowledge of the character of soils, and of the best methods of protection, that is not acquired by common experience and observation. Objection is made to the italicized part of the first instruction given for appellee, which is as follows :

" If you believe from the evidence that Harry Lovell, while in the exercise of ordinary care for his safety and without fault or negligence on his part, lost his life *by and through the negligence of defendant as charged in the declaration,*" etc.

The criticism is, that the court invaded the province of the jury by telling them in this instruction, that what was charged in the declaration constituted negligence. It was for the court to say whether the declaration charged negligence, and for the jury to say if the negligence charged was proved.

Appellant filed a general demurrer to the declaration, which was overruled, and the general issue was then pleaded. The demurrer admitted all allegations well pleaded. In overruling the demurrer the court must have held that the declaration charged negligence on the part of appellant. If appellant insisted that the facts alleged in the declaration did not constitute negligence, he should have abided by his demurrer. It was no error then to instruct the jury that if they believed from the evidence that the deceased, while in the exercise of ordinary care, lost his life through the negligence of the defendant as charged in the declaration, that appellee was entitled to recover, etc.

It is also urged that as the city engineer had supervision of the construction of the sewer, " it can scarcely be said that the defendant, Degenhart, would be responsible for an

accident to the man, for the reason that he had not that control which would cast that responsibility upon him."

There is no evidence to show that the supervision by the engineer was more than to see that the sewer was properly constructed under the contract. Such supervision would not relieve defendant from responsibility in the construction of the sewer.

The most important question in the case is one of fact, namely, did Harry Lovell, the deceased, assume the risk of excavating without the sides of the sewer being braced and protected?

There is evidence tending to show that the deceased had experience in similar work, and that both his co-laborers and appellant depended upon his judgment as to whether protection by planking the sides of the excavation was necessary. The testimony of two of the witnesses, Lewallen and Manley, who were working with the deceased at the time of his death, was given by depositions. The accident occurred about half past one P. M. Lewallen testifies:

" We were sitting by a tool house, about fifteen minutes before one. Degenhart said, ' Well, Harry, what do you think about the ditch?' I says, ' I can not see anything wrong with the ditch,' and then he says to Harry, ' I have about a load or a load and a half of lumber, and if there is any danger we will get that and brace it;' and Harry says, ' There is not any danger that I can see.' Then Degenhart told us to go to work. Directly after we went to work, Degenhart came to the ditch, and asked Harry if he thought the ditch was safe, and Harry spoke up and said it was perfectly safe. Degenhart said, ' I do not want any more men hurt by cave-ins; if there is any danger, Harry, get out;' and Harry said, ' It is all right.' I told him (Harry Lovell) I had never had any experience in this work, and I did not know whether I could do it, and he says, ' I have had seven years in tunneling, and you can do it as well as I can.' I was depending upon the judgment of Harry Lovell and his experience."

Manley, who was working in the ditch with the deceased, substantially corroborates Lewallen's evidence. He testifies that about eleven o'clock he heard Degenhart ask Lovell if the bank was safe and that he answered that it

Degenhart v. Gent.

was; that the next time he heard him speak to Lovell was about one o'clock; that he asked him if the ditch was safe, and said if he (Harry) thought it was not, he had some lumber and would brace it; that Harry told him the ditch was all right. "Degenhart told us if the ditch was not safe, to get out; but Lovell said it was all right, and went to putting in a scaffold. I asked him if he thought it was safe, and he said, 'Yes, it is all right.' I really did not think there was any danger, and supposed Mr. Lovell knew, and Mr. Degenhart put a great deal of dependence in him."

Chadwick, also a laborer in the ditch, testifies that he heard Degenhart say to Harry if the ditch was not safe to get out, and that Harry replied, "Oh hell! this is all right;" that when Degenhart said this, Harry hit the bank with a bar or shovel, and said, "This is all right." Choussee testifies that he was throwing the dirt back from the edge of the ditch, as it was thrown up from the platform; that he heard Degenhart tell the men to be careful, and that he heard one man in the ditch tell him there was no danger there.

Appellant testifies that the ground was hard, and the men had to use picks; that they could not spade it; that he thought it was safe and the men thought it was safe; that intervals of four or five feet in width were left, under which they tunneled, and that these served as braces.

If these witnesses told the truth, Lovell assumed the risks, and appellee can not recover. It is true that there was evidence tending to impeach some of these witnesses. Four witnesses testified that they had known Manley for years, and that his reputation for truth and veracity was bad. Charles Gent, the plaintiff, testifies that he had a conversation with Lewallen before he left the city in which he said that no notice or warning was given to any of the men in the ditch. Richard Taylor, contradicting Chadwick, testified that Chadwick had told him within two weeks, that Degenhardt had given him a suit of clothes. Chadwick admitted borrowing $20 from appellant to pay expenses for

burying his sister, but says he gave his note for it. He denies having told Taylor that appellant gave him a suit of clothes, but says he told him he borrowed the money from one Dorsey with which to buy the clothes. Chaussee, however, is in no way impeached. He testifies as given in the record, " He (Degenhart) was there all day."

Q. Did you hear any conversation between him and the men in the ditch? A. He told them a dozen times to be careful, and I heard one man tell him there was no danger.

Q. How long before the cave-in did you hear that man tell Degenhardt that there was no danger? A. About a half hour or somewhere along there."

Chaussee was not acquainted with the men, having only worked there a day, and does not know which one made the remark.

His testimony, then, corroborates Manley, Lewallen and Chadwick.

If this class of evidence is true, the deceased affirmatively assumed the risk of working in the ditch without its sides being protected. In addition to this is the uncontroverted fact that he did work there with it unprotected, and that there is no evidence to indicate that he was not as fully acquainted with the risks of so working as was appellant. If this was so, without evidence to show that he worked under such commands or compulsion as to take the case out of the general rule, his administrator can not recover. This is so although there may have been a safer way of doing the work.

" If a servant knowing the hazards of his employment, as the business is conducted, is injured while engaged therein, he can not maintain an action against the master for the injury merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury." Simmons v. The Chicago & T. R. R. Co., 110 Ill. 340.

While reluctant to interfere with the finding of a jury upon issues of fact, the evidence forces upon us the conclusion that sympathy for the widow and orphan child of the

deceased, rather than a dispassionate consideration of the evidence and the instructions of the court, must have influenced the jurors in making their verdict.

The case should be submitted to another jury. Judgment is therefore reversed and the case remanded.