## Burch v. Louisville Car Wheel & Railway Supply Co.

(Decided January 17, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Master and Servant—Personal Injury—Action for Damages—Peremptory Instruction.—In an action for damages by a servant against the master for personal injuries alleged to have been due to the negligence of the master, evidence examined, and held insufficient to take the case to the jury.

2. Same—Defective Appliance—Evidence.—Where it is the duty of the servant to open the doors of a cupola in a foundry by using a long, hooked iron pole to pull one end of a vertical iron bar supporting the doors from off the wedge on which it is resting, and the doors hang and do not open in response to such pull, this fact can not be regarded as evidence of any defect in the doors, vertical bar or other appliances, as it is much more probable that the doors hung because of an insufficient pull than because of any defect in the appliances.

3. Pleading—Specifying Negligence.—Where the plaintiff specifies the negligence relied upon, he can not recover on any other ground.

4. Same—Assumption of Risk—Known Hazards.—Where a servant knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he can not recover merely on the ground that there was a safer mode in which the

business might have been conducted, the adoption of which would have prevented the injury.

McQUOWN & BECKHAM and HERMAN MORRIS for appellant.

HENRY BURNETT for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Appellant, Willis Burch, while at work in the foundry of appellee, Louisville Car Wheel & Supply Co., was enveloped by burning slag and molten iron which fell from the cupola, and badly burned. He brought this action to recover damages. At the conclusion of his evidence, the court directed a verdict in favor of appellee, and judgment was entered accordingly. To review the propriety of this ruling, this appeal is prosecuted.

Appellant based his action on two grounds of negligence: First, failure to furnish safe tools and appliances with which to work; second, failure to furnish him a reasonably safe place in which to work.

The facts developed by appellant's evidence are in brief as follows: At the time of the accident, appellant was about forty years of age. He had worked for appellee about twelve years at its other foundry on Jefferson street in the capacity of "cupola tender." He was employed in the same capacity at the foundry where he was injured, and had been working there about five or six weeks, and knew how to do the work. His wages were $2.50 per day. Among his duties were "to fix up the cupola, pick it out, daub it up, put in the bottom, and light it up." He then turned on the blast for the purpose of melting the iron ore. The molten iron was then let out into iron buckets, and he superintended this work, which continued throughout the day until late in the afternoon. It was then his duty to let out of the cupola the remaining slag and other molten material. To do this it was necessary to open the bottom of the cupola which consisted of two iron doors that folded back in an upward direction. The doors were held in place by three vertical iron bars which rested on the floor immediately underneath the cupola, and which were placed in position by appellant each morning before the cupola was filled with coke, sand, iron ore, etc. Two of these vertical bars the appellant would remove by unscrewing them. The third rested on a wedge, and when this bar was re-

moved, the doors would swing open and the molten material would come out. To remove the third bar appellant was supplied with an iron rod, or pole seventeen and one-half feet long, and hooked at one end. This he would place around the vertical bar, and pull the latter from off the wedge. The room where appellant was at work was twenty-three feet wide. When he made the pull, he would run rapidly out the door in order to escape injury from the molten iron, steam, smoke and flame which would spread out over the floor. On the occasion of the accident, appellant had unscrewed two of the uprights. He then placed the iron hook around the bottom of the remaining up-right bar, went to the end of the iron pole, gave a jerk, and ran out of the room. The doors hung and did not open. Appellant then returned and picked up the iron pole the hook on which was still around the vertical bar. When he picked up the long iron pole, the door came open, and before he could get out of the way, he was covered with molten iron. In using the pole, he made use of the only means provided for opening the doors of the cupola. Appellant called the attention of the superintendent to the dangers incident to the work, and the superintendent said he was going to "fix it better so that it would not be quite so dangerous." Appellant admitted that he knew the work was dangerous, and that he would be injured if he did not get out of the way of the molten iron and flames. Two or three moulders testified that the method of operating the cupola in question was dangerous, and that a safe way was either to use a chain that would enable the operator to stand on the outside of a wall, or to drop the cupola from the top, or to drop it behind a wall with a bar.

For appellant it is contended that there was sufficient evidence of unsafe appliances to take the case to the jury. Not a single witness testifies to any defect in the doors, vertical bar, or other appliances. Unless, therefore, we can say that because the doors hung, there must have been a defect somewhere, there is no evidence of any defect. But as the hook on the long iron pole was still around the bottom of the vertical bar and the bar was still resting on the wedge, and when the appellant picked up the iron pole, though he claims not to have made a second pull, the door opened, it is much more probable that he made an insufficient jerk than that the doors, vertical bar or other appliances were in a de-

fective condition. That being true, the fact that the doors hung can not be regarded as evidence of any defect in the doors or other appliances. (Harcourt & Co. v. Redmon, 145 Ky., 512.)

But it is insisted that the place where appellant was required to work was extremely dangerous, and that the place might have been rendered safe by the use of other appliances. Conceding this to be true, no one was better apprised of this fact than appellant. He was an old, experienced employe of twelve years service. He knew all about the cupola and the dangers incident to his work. In entering appellee's service, he assumed all the risks ordinarily and usually incident to the employment, of which he knew, or which were so obvious and patent as to import knowledge to a person of ordinary prudence. The danger of being burned by the molten matter was one of the risks ordinarily and usually incident to the business. Appellee knew this fact and appreciated the danger. Therefore, he assumed the risk. Nor does the fact that appellee might have provided appellant with a chain, or erected an intervening wall, or adopted some other method of doing the work, affect the question, for it is well settled that where a servant knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he can not recover merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury. (Degenhart v. Gent, 97 Ill. App., 145.)

While there is evidence to the effect that appellee's superintendent promised to repair or rather remedy the existing conditions so as to make them less dangerous, appellant did not allege this in his pleading as a ground of recovery. The only negligence relied upon was the failure of appellee to furnish safe and suitable tools and appliances and a reasonably safe place in which to work. Having specified the negligence complained of, he can not recover on any other ground. (W. A. Gaines & Co. v. Johnson, 105 S. W., 381; 32 Ky. Law Rep., 58; Lexington Railway Co. v. Britton, 130 Ky., 676.)

There being no evidence upon which to submit the case to the jury, it follows that the peremptory instruction in favor of appellee was proper.

Judgment affirmed.