## Brucken v. Myers.

(Decided April 17, 1913.)

### Appeal from Muhlenberg Circuit Court.

1. Master and Servant—Assumption of Risk.—While an employe assumes the ordinary risks incident to the employment, he does not assume risks that attend or follow the negligent conduct of his superior officers.

2. Master and Servant—Assumption of Risk.—If there is a safe and an unsafe way of doing a thing, and the employe is acquainted with both methods and voluntarily selects the unsafe one when he could have selected the safe one, he cannot hold the master liable for an injury received, as he will be deemed to have voluntarily assumed the risk of adopting the dangerous in place of the safe method of doing his work.

R. A. MILLER, WALKER WILKINS and TAYLOR & EAVES for appellant.

NEWTON BELCHER, BELCHER & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, while engaged at work for the appellant at a sawmill received personal injuries, and in this action to recover damages was awarded by the jury that heard the case $2,000. No complaint is made of the size of the verdict, but we are asked by appellant to order a new trial for reasons that will be later stated.

At the time appellee was injured he was engaged in assisting to move a long log from a truck to skids on which it was intended to roll or pull the log to the saw carriage. In the performance of this service appellee had his arms around the small end of the log, and there had also been placed around it a chain connected with the mill machinery, which was used for the purpose of pulling the log. While appellee was so holding the log, the sawyer, who was also a superior servant of appellee, started the engine that operated the chain, and, when the log was moved by the chain, the end at which appellee was located suddenly swung around against his leg, breaking it at the ankle.

While it is conceded that appellee was injured in the manner stated, counsel for appellant contend that his injury was the result of his own negligence and not that of the sawyer, resting his argument on the ground that appellee, who had worked about the mill some time and was familiar with the manner in which logs were handled, knew that the proper way to hold logs about to be moved, or that it was desired to move, was with a cant hook, a sufficient supply of which were kept at the mill for the use of the hands, and that in taking hold of the log with his hands in place of with the cant hook, he not only violated a rule of the company, but voluntarily and unnecessarily assumed a place of danger, and hence was guilty of such contributory negligence as entitled a directed verdict against him. It is further contended that the sawyer moved the log in the usual way and without giving it a jerk.

Appellee testified in substance that it was necessary to take hold of the log at the place he did for the purpose of getting it in place so that it could be pulled by the chain to the saw carriage, and, that when he assumed the position stated, he was in full view of the sawyer, who was standing about thirty-four feet from him, and could plainly see him and what he was doing, but that, without giving him any warning that he was going to apply extra force to the log with the chain, he suddenly jerked it, with the result stated. He further said that it was necessary that he should take hold of the log in the manner he did to make it "take the skids," and that while it was customary to use cant hooks if they were convenient, he had also been in the habit of holding the logs with his hands, as he was doing when injured; that all the cant hooks were in use except one, and that one was no account, and

so it became necessary for him to take hold of the log with his hands.

Willie Moseley, who testified in behalf of appellee, said that when appellee was injured, he was assisting to roll the log to the saw carriage, and that there were only two cant hooks about there, one of which was being used by himself and the other by Newcomb. He further testified that the sawyer, without giving any notice of his intention, although the parties in charge of the log were in plain view of him, started the log, by means of the chain, with a jerk, causing it to swing around and strike appellee.

Dunlap, the sawyer, a witness for appellant, said in substance that when the chain was adjusted on the log, he applied the force to it gradually, in the usual and customary manner, and denied that the log was jerked or moved otherwise than in a safe and proper way. This witness, as well as others for appellant, further testified that the proper and usual way to hold logs was with cant hooks, and that when appellee was injured there were good cant hooks convenient that he could have gotten and used if he had wanted to. They also testified that it was unsafe and against the rules to attempt to hold or move logs without the cant hooks.

From this brief statement of the evidence it will be seen that the case for appellee depended upon whether or not the sawyer negligently moved the log with a jerk, and upon this issue alone, so far as the liability of appellant was concerned, the case was submitted to the jury in an instruction telling them that if they believed from the evidence ''that the defendant's sawyer, who had charge of the chain and pulley mentioned by the witnesses, in a grossly negligent manner jerked the log, that was being moved from the truck to the skidway, while the plaintiff had hold of said log, and that the said log was thereby caused to fall upon the plaintiff and to break his leg or otherwise injure him, then, and in that event, the jury will find for the plaintiff.''

They were also instructed that although they might believe that the sawyer was negligent in starting the log with a jerk, yet, if they further believed ''that the plaintiff was himself negligent on the occasion in controversy, and that his said negligence contributed to his receiving said injuries to such an extent that his said injuries would not have been received but for his said negligence,

if any, then, and in that event, the jury will find for the defendant.''

We may further add that no instructions were offered by counsel for appellant, and that the only instructions given were those prepared by the court, which, we think, fairly submitted to the jury the only issues in the case. There is really no question of law involved. The issues are purely of fact.

In answer to the argument of counsel for appellant that appellee assumed as one of the incidents of his employment the risk of being injured and brought on the injury by his own negligence in taking hold of the log with his hand in place of using the cant hook, we may say that while an employe assumes the ordinary risks incident to the employment, he does not assume risks that attend or follow the negligent conduct of his superior officers. The doctrine of assumption of risk has never been extended by this court so far as to exonerate the employer from injuries to his employes that resulted from his negligence, and while it is true that appellee assumed the risk of being hurt by the movement of the log in the ordinary and usual way, he did not assume the risk of being hurt when it was not moved in the usual and ordinary way, but with a jerk of which he had no notice, and the evidence in his behalf supported the theory of the case that his injury was caused by the negligent jerking of the log.

It is also true that if there is a safe and unsafe way of doing a thing, and the employe is acquainted with both methods, and voluntarily selects the unsafe one when he could have selected the safe one, he cannot hold the master liable for an injury received, as he will be deemed to have voluntarily assumed the risk of adopting the dangerous in place of the safe method of doing his work; but the evidence in behalf of appellee showed that it was necessary he should hold the log and that it was customary to hold it in the manner he did, and that no cant hook was present that he could use, and so the court did not err in not taking the case from the jury, nor can counsel for appellant complain that the jury were not instructed upon any issues other than those mentioned in the instructions, because he did not request instructions upon any other issues.

Indeed, as we look at the evidence, the only issues in the case were those submitted in the instructions, and we take it for granted that this was the view of counsel

in the trial of the case. There was, of course, a sharp issue of fact made upon the issues submitted between the witnesses for appellant and appellee, but the jury preferred to accept the statements of appellee and his witnesses rather than the statements of the witnesses for appellant, and it cannot be said that there was not sufficient evidence to support the verdict.

Upon the whole case, our conclusion is that the evidence on behalf of appellee fully warranted the submission of the case to the jury and justified the verdict returned.

The judgment is affirmed.