## Smith v. Kestner & Hecht Company.

(Decided February 5, 1914.)

Appeal from Jefferson Circuit Court.
(Common Pleas Branch, First Division).

1. Master and Servant—Assumed Risk.—When an experienced and capable servant voluntarily and without any orders or directions from the master needlessly exposes himself to great danger, he takes the risk of any accident that may happen.

2. Master and Servant—Safe and Unsafe Way To Do Work.— When there is a safe and an unsafe way in which a servant may do the work which he is engaged to do, and he voluntarily and knowingly adopts the unsafe way and is injured as a consequence thereof, the master will not be liable.

JACOB SOLINGER for appellant.

W. W. DAVIES for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellees were engaged as contractors in installin elevators in a large office building in Louisville. One of their employes was the appellant, who had been working in this character of business for a number of years, and for some time previous to the date of his injuries had been at work in this Louisville building. He was a mature, experienced elevator workman and fully understood all the dangers of his employment.

In this building there were four elevator shafts that may be designated as one, two, three and four. The building when appellant was injured had not been completed or any of the elevators installed, but a temporary elevator for the use of the laborers on the building was running in shaft number one. Appellant was working in the twelfth story of the building, and this floor, except

at the openings for the elevators in shafts one and two, was covered with flooring, the openings in shafts three and four on this floor also being covered. Between these shafts on each floor there was an iron beam about six inches wide. Appellant, a few days before he was injured, was engaged in making holes or doing some other kind of work in the iron beam that separated shaft number one from shaft number two, and while engaged at work on this beam he had a helper or assistant named Wright. The elevator in shaft number one, in its course up and down the shaft, passed close to the iron beam between shaft number one and shaft number two, and while appellant was engaged on this beam he was in constant danger of being struck by the elevator in its upward or downward movements, and for this reason it was very important that he should have an assistant or helper not only to warn him of the approach of the elevator but to save him from the necessity of exposing himself to the risk of being struck by the elevator in getting tools and implements necessary in his work.

The day before he was injured he was directed to do some work on the wall in the twelfth story in shaft number two. Engaged with him in this work was a man named Waller, and appellant and Waller while working stood on two strong planks seventeen inches wide, suspended across shaft number two. While engaged in doing this work he was two or three feet away from shaft number one and in no danger of being struck by the elevator, although he was working on that side of shaft number two nearest to the elevator, Waller working on the side nearest to shaft number three, which shaft, as we have stated, was covered with lumber even with the flooring in this story.

When appellant was put at this work his employer took away from him the helper or assistant he previously had, although, as he testifies, he protested that the presence of this assistant was necessary to enable him not only to do his work well but to escape being hurt by the elevator. Being without an assistant, it became necessary during the progress of the work to go out on the floor of this story for the purpose of getting tools and other things necessary to do the work, and there were two ways to go out on the floor from where he was working. One way, and the dangerous way, was to walk or crawl on the six inch beam between shaft number one and

shaft number two, and the safe way was to walk on the seventeen inch planks to shaft number three, which was covered with flooring. On the occasion in question appellant found it necessary to go out in the building and he adopted the dangerous method of attempting to crawl to the flooring on top of the six inch beam, and while so doing a part of his body extended over shaft number one and into the space in which the elevator ran, and he was struck by it, receiving severe injuries. To recover for the injuries thus sustained, he brought this suit, and upon a trial of the case, the court directed a verdict for the appellees, and it is the correctness of this ruling of the court we are called on to review.

Under the facts stated we think the court was clearly correct. Appellant knew the elevator was running in shaft number one. He knew that it passed within a few inches of the beam between shaft number one and shaft number two. He knew that if the elevator passed this beam while he was crawling out on it, it would almost certainly strike him, and yet with full knowledge of these conditions, he undertook to crawl out on this beam, and was struck by the elevator.

The claim that this was the easiest and most convenient and usual way to get from where he was to the floor, is not sufficient to save him from the consequences of his own reckless act, the danger attending which he knew full well; nor does his statement, that it was the duty of appellees to have given him a helper as he requested, add anything to the strength of his case. While engaged in working on the wall he was in no danger of being struck by the elevator. The place he was working was as safe without a helper as with one. The danger only commenced when he undertook to leave this place by the dangerous route that he selected.

When an experienced and capable servant, as appellant was, voluntarily, and without orders or directions from the master, needlessly exposes himself to great danger, he takes the risk of any accident that may happen. Appellant's own negligence was the sole cause of the injuries he received.

There is another good reason why he should not recover if his duties required him, as we assume they did, to leave the place of safety where he was at work and go out in the building. He could have done this by walking on the planks he and Waller were standing on to shaft number three without danger and without assum-

ing risk of any kind other than those that naturally belonged to the character of work he was engaged in.

He thus had a safe way and an unsafe way in which to do his work, and he adopted the unsafe one. He testifies that it would have been inconvenient and would have occasioned some delay had he undertaken to have passed by Waller in going to shaft number three. Probably this may be so, but the planks that Waller and appellant were standing on were strong, sound planks, seventeen inches wide and within a foot or so of the wall, and he could have gone out this way without causing Waller more than a moment's delay, if it was necessary that Waller should have himself gotten on the floor of shaft number three to enable appellant to safely cross to the shaft.

And when there is a safe and an unsafe way in which an experienced servant may do the work which he is engaged to do, and he voluntarily and knowingly adopts the unsafe way and is injured as a consequence thereof, the master will not be liable.

Wherefore, the judgment is affirmed.