## Glenn, Administrator, for et al. v. Cincinnati, New Orleans & Texas Pacific Railway Company.

(Decided February 17, 1914.)

### Appeal from Kenton Circuit Court (Common Criminal Law & Equity Division.)

1. Master and Servant—When Servant Cannot Recover.—A servant who falls into a pit in a railroad shop where he has been engaged for some time cannot recover of the master for his injury, when he has continued in the service without complaint with knowledge of the pit and its condition.

2. Assumption of Risk—Interstate Commerce Act.—The Interstate Commerce Act does not change the rule as to assumed risks except as to those appliances which it requires to be maintained.

JACKSON & WOODWARD for appellant.

GALVIN & GALVIN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Edward Glenn was in the employ of the Cincinnati, New Orleans & Texas Pacific Railway Company in its shop at Ludlow, Kentucky, as a boiler maker helper, and came to his death in this way: There were in the shops a number of tracks on which locomotives were placed to be overhauled; on some of these tracks there was what was called the drop pit, which was about 9 feet deep and about 16 feet long, this pit being used when the large driving wheels were to be taken off a locomotive. The pit was used so as to avoid the necessity of jacking up the locomotive, the driving wheels being dropped in the pit when taken off. There was a cover over about one-third of this pit at either end but no cover over about one-third of it in the center. An engine was not placed over this pit unless they wanted to take off the big driving wheels; there were smaller pits under the tracks on which engines were placed when it was necessary simply to go under them. Glenn had been working in the shops for some time and understood the premises perfectly. On the afternoon of December 6, 1911, there were two engines in the shop on which the men were working, No. 531 and No. 600. Until about half past four Glenn and another man were blowing the flues on engine No. 531; the foreman was in a hurry for the engine and they were making a special effort to get it out. Glenn finished on that engine at half past four and was then assigned to engine No. 600. William Clifford testified that he saw him at work about a quarter to five and did not see him any more until the next morning about eight o'clock when one of the men found him in the drop pit dead. Robert Green also saw him working on this engine an hour or so before they quit. No work was being carried on then on the drop pit; the engines they were working on were at other places. Thomas Don Equi testified that Glenn was taking down an ash pan on engine No. 600 or helping to take down one; the last time he saw him was about five minutes before quitting time, and he saw him no more alive. Charles A. Cox stated that a man named Donahue was on the inside of the engine; that he helped on the outside to put up an ash pan and that Glenn and a man named Sullivan helped; that he last saw Glenn something like two or three minutes

before five and he was then standing at the corner of the engine; at that time Cox was going back into the fire-box to get some tools out of the fire-box, and after getting the tools went on toward the office and this was about three minutes before the whistle blew for five o'clock when they quit work; he only remained in the fire-box long enough to get the tools. Glenn when found next morning in the pit had received an injury upon his head causing concussion of the brain and producing death. The circumstances show that he fell into the drop pit, his head striking against the concrete bottom and that this caused his death. The occurrence happened on December 6, after dark; there were lights in the shop but the proof for the plaintiff tended to show that these lights would not shine upon the drop pit and did not sufficiently illuminate it. But the drop pit was only a few feet from where the deceased had been working all day, and as he had been working in the shop some time he knew perfectly well where it was and that there were no barriers around it and no cover over the center of it. No complaint of it had been made. On these facts the circuit court instructed the jury peremptorily to find for the defendant. The plaintiff appeals.

The action was brought under the Federal Employer's liability Act, and while that act provides that contributory negligence shall not bar a recovery, but only mitigate the damages, it makes no change in the rule as to assumed risks except as to the safety of appliances provided for by the act of Congress. As there is no provision in the act as to any appliances that are here in question, the case must be determined under the general rule as to the assumption of risks by servants.

In Williams v. L. & N. R. R. Co., 111 Ky., 822, the plaintiff, an employee of the railroad company, had fallen at night into an ash pit maintained by the railroad company in its yards at Lexington. Denying a recovery, this court quoted with approval from 2 Thompson on Negligence, p. 108, as follows:

"If the servant knows, or by the exercise of ordinary observation could discover, that the premises in which he is to labor are unsafe or unfit in any particular, and if, notwithstanding such knowledge or means of knowledge, he voluntarily continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discoverable, and to

waive any claim for damages against the master in case it shall result in injury to him."

This case was followed in Wallace v. South Coving-ton, Etc., R. R. Co., 118 S. W., 962, where the plaintiff had fallen into a pit in a car barn which was not guarded. Denying a recovery upon the authority of the previous cases, we said:

"It was necessary to have a pit in the barn, so the workmen could get under the cars. The plaintiff was well aware of its existence, and his falling into it was due to no negligence on the part of the defendant. He knew it was not guarded, and cannot complain that there were no guard to protect him from falling into it."

In Flaig v. Andrews Steel Co., 141 Ky., 391, the plaintiff had fallen into a pit in a foundry under circumstances much stronger than those shown here. Denying a recovery after citing a number of authorities, we said:

"Thus the rule appears to be well settled, that where one accepts a hazardous employment, knowing of the dangers with which it is surrounded, he is presumed to assume the risks ordinarily incident to that business. Applying this rule to the case at bar, appellant, in accepting the employment and undertaking to discharge the duties assigned him at the place where he was stationed near the pit, is in no condition to complain because the pit was not covered.  *  *  *

"A railroad brakeman, working upon the top of box cars, is engaged in a most hazardous undertaking, for if at any time while the train is standing or in motion he should lose his balance and fall from the car, he would likely meet with serious injury. And yet, unless it could be charged that he was caused to lose his balance by some act of those in charge of the train which amounted to negligence, the company would be in no wise answerable for his injury."

In that case the pit was so close to the servant and the nature of his work was such that the pit was a constant source of danger to him in the work. But here the pit was some feet from the servant and he was in no danger from it while at work on the engine. How or when the deceased fell in the pit the evidence does not show. There was nothing in his work to call him to the pit. It is as probable under the evidence that he fell in the pit after he quit work for the evening as that he fell into it

in the course of his employment. The condition of things was as they had always been.

We do not see how this case can be distinguished from those cited. The circuit court properly instructed the jury peremptorily to find for the defendant.

Judgment affirmed.