## Enos' Administratrix v. Kentucky Distilleries & Warehouse Co., et al.

### (Decided March 16, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

Master and Servant—Assumed Risk—Accidental Injury.—There can be no recovery for the death of an experienced employe who fell through an opening in an unprotected elevator shaft, with the condition of which he was familiar, while assisting in lowering whiskey with a block and tackle. As there was no defect in the machinery used or the premises where the work was being done, and no evidence tending to show the cause of his fall, the case presents every element necessary to perfect the complete defense of accidental injury and assumed risk.

O'DOHERTY & YONTS for appellant.

BENNETT H. YOUNG, MARION W. RIPY and GIBSON & CRAWFORD for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Thomas Enos, an intelligent, capable, experienced young man, while engaged as an employe by the Kentucky Distilleries Warehouse Company at one of its warehouses in which whiskey was stored, fell through the opening of the elevator shaft on the fifth floor and was killed. In this suit by his administratrix to recover damages for his death the trial court, at the conclusion of the evidence for the plaintiff, instructed the jury to return a verdict for the defendant, and judgment went accordingly.

On this appeal it is urged as a ground for reversal that the trial court should have submitted the case to the jury, but a careful reading of the record satisfies us that the trial court ruled correctly.

Thomas Enos had been working about the warehouse for several months doing all kinds of work, and was very familiar with the premises. The warehouse was six stories high, each story being filled with barrels of whiskey. When it was desired to take whiskey out of the warehouse it was usually lowered to the first floor by an elevator, but some days before this accident happened the elevator had been taken out for repair, and after it was taken out the whiskey was lowered to the first floor by the familiar method of the block and tackle. This block and tackle was attached to the ceiling of the sixth floor and the barrels were lowered by fastening hooks attached to a rope around the chimes of the barrel. When the hooks were attached the barrel would be swung out over the opening of the elevator shaft by the man in charge and lowered to the bottom floor. The opening for the elevator shaft on each of the floors was some six or eight feet square, and at the time of the accident there were no barriers or protection of any kind around these openings on any of the floors. The elevator shaft was near the end of the building, and there is some conflict in the evidence as to whether this end of the building was well lighted or not, but there is no dispute about the fact that the opening could be plainly seen.

On the day he was killed Enos and two other employes about the warehouse were directed by the foreman in charge of the warehouse to lower some whiskey barrels from the fifth floor to the first floor. After the

whiskey had been taken out of the racks and put on the floor under the direction of the foreman he left the men and went down to the first floor. He did not give any directions how to lower the whiskey, as they knew how to do it, and he left them before any of the whiskey had been lowered, without giving any orders except to lower it. After he left two of the men went from the fifth to the sixth floor to operate the block and tackle there attached, and Enos remained on the fifth floor to put the hooks under the chimes of the barrel and swing the barrel out over the opening. The method of doing this work was very simple, the machinery was in perfect condition, and there was no defective or unsafe place about the premises where he was working, except the unguarded and unprotected opening of the elevator shaft on this floor.

A few days before the accident some carpenters had been working about this elevator opening on the fifth floor, and they had left a heavy, strong plank, ten or twelve inches wide, across this opening, near to one side of it, so that in doing their work they could walk across on this plank, which projected over the floor on each side of the opening a sufficient distance to make it perfectly safe to walk across on it.

A few minutes after the foreman left, and after the hooks had been fastened on one barrel and the barrel had been swung out over the opening ready to be lowered to the first floor, Enos, from some cause not in any manner explained by the evidence, fell through this opening and was killed. There fell with him the plank that had been across the elevator opening, but there is no evidence as to what caused it to fall, although it is very plain that it must have been moved in some way by Enos or else it could not have fallen.

Several theories are advanced by counsel as to how Enos happened to fall, but there is no evidence supporting any of them. All that is known is that he and the plank fell, and that he must in some way have moved the plank. The opening in the floor was right before the eyes of Enos and he knew it was there. He was an experienced, capable, intelligent man. He had not been given any instructions or directions how to do his work, because none were needed. The work was simple and easily performed.

There is present in this case every element necessary to perfect the complete defense that was relied on of accidental injury and assumed risk.

If we should indulge in speculation as to how the accident happened, our conclusion would be that Enos lost his balance and fell, striking the plank and causing it to fall with him, or that in moving the plank—although it was not necessary to move it to lower the whiskey—he lost his balance and fell. But, whatever caused him to fall, it was not attributable to any fault of or negligence on the part of his employer. Flaig v. Andrews Steel Co., 141 Ky., 391; Burch v. Louisville Car Wheel & Ry. Supply Co., 146 Ky., 272; Wilson v. Chess & Wymond Co., 117 Ky., 567; Glenn v. C., N. O. & T. P. Ry. Co., 157 Ky., 453; Rogers' Admr. v. Kosmos Portland Cement Co., 163 Ky., 84; C. & O. Ry. Co. v. Walker's Admr., 159 Ky., 237.

Complaint is made that the trial court refused to admit evidence showing that in other distillery warehouses it was customary to have elevator openings protected. What the custom was in other warehouses had nothing to do with this case. The circumstances remove it entirely from every exception we have laid down exempting laborers from the doctrine of assumed risk.

Some question is also made in respect to the action of the trial court in refusing to permit an amended petition, setting up a promise to repair to be filed, but we find no error in this ruling.

Wherefore, the judgment is affirmed.