## Corbin Ice & Carbonating Co. v. Ellison.

(Decided March 21, 1916.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Assumption of Risk—Safe Place to Work.—When the servant is perfectly familiar with the surroundings and conditions of the place furnished him to do his work, and without protest he continues to perform the work with the place furnished him unchanged, he assumes the risk of accidents growing out of the dangerous condition.

2. Master and Servant—Assumption of Risk.—In such cases if the servant has made complaint to the master who promised to render the place safe, he may continue the work for a reasonable time without assuming the risk unless such dangerous condition is so patent and plain that an ordinarily prudent man would appreciate the danger incident to working there.

3. Master and Servant—When Master Not Liable.—If there is a safe and also an unsafe way to do the work and the servant voluntarily chooses the unsafe way and is thereby injured, he cannot hold the master liable for his injuries.

4. Master and Servant—When Master Not Liable for Servant's Injuries.—A servant was engaged in unloading blocks of ice from an elevator on to a platform. The platform was unbanistered and was about fifteen feet above the floor below, one side of it being next to a wall of the storage room for the ice; through this wall was an opening to permit the ice being placed in a chute to be conveyed to cars and it was for this purpose that the ice was being put upon the platform. To have unloaded the ice on the side of the elevator and next to the wall of the storage room near this opening would have been safe, but to have unloaded it on the platform next to its outer edge where the servant did actually unload it, was unsafe, and when the icehooks pulled loose from the block of ice, he fell to the floor below sustaining his injuries. Held, that his employer was not liable.

S. H. KASH and TYE, SILER & GATLIFF for appellant.

STEPHENS & STEELY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellant, Corbin Ice & Carbonating Co., owns and operates an ice plant in the town of Corbin, Whitley county, Kentucky. Its plant is located near the railroad track, and besides manufacturing and selling ice in the usual way, it is also engaged in, as a part of its business, the icing or re-icing of refrigerator cars, as it may be called upon by the railroad company to do so. As a part of its equipment for doing this there is constructed from its storage room and extending out to the railroad track a chute which enters into the storage room by a small aperture through which the ice is put into the chute and conducted through it to the car in supplying it with ice. In the storage room where the ice is kept and by the side of the wall next to the railroad track is a platform erected about 15 feet above the floor of the storage room, and which is 9 feet and 2 inches wide and 23 feet and 3 inches long. There is an opening in this platform next to the wall of the storage room through which an elevator passes, by means of which the ice is brought to the platform from which it is put into the chute for the purposes stated. The floor of the elevator is a perfect square and is 6 feet and 3 inches each way, the opening in the platform through which

it passes being practically the same size. There is no banistering along the edge of this platform at either end or on the side furthest from the wall of the building. The opening through it for the elevator is on the side next to the wall and against it and the aperture in the wall through which the ice is put into the chute is 2 feet and 11 inches from the edge of the elevator opening. From the outer edge of this opening to the outer edge of the platform is but 2 feet and 9 inches.

In July, 1914, the appellee, who was about 23 years of age, and who had been working at the plant of appellant for nearly four years, was instructed to go into the storage room and carry to the platform, by means of the elevator, some ice, as it was expected that it would be needed within a short while for the purpose of icing some cars soon to arrive. He, together with a fellow-workman, undertook to do this and loaded on the elevator five blocks of ice and carried same up to the platform to be unloaded thereon so that it might be used for the purposes stated. He undertook to remove one of these blocks by the use of ice-hooks off of the elevator on to the platform, and in doing so the hold which the hooks had on the block of ice broke loose by tearing the ice, and he was thereby made to fall from the platform to the floor below, a distance of fifteen feet, whereby he sustained injuries, to recover damages for which he filed this suit. Upon a trial he was awarded by the jury a verdict of $500.00, upon which judgment was rendered, and complaining of that this appeal is prosecuted by the ice company.

The petition, after alleging that it was the duty of the appellant to do so, charged that it negligently "refused and neglected to provide for this plaintiff or to use ordinary care to provide for him a reasonably safe place in which to work and perform the work which he was ordered to do by it, and failed and refused to employ and furnish him sufficient and necessary help and assistance to do and perform the said work and necessary and safe tools, appliances and equipment with which to work and perform the said labor."

It will be seen that the three grounds upon which a recovery is sought are: (1) That the defendant failed to furnish him a reasonably safe place in which to work; (2) that the defendant failed to furnish him reasonably safe tools, equipment and appliances with which to work;

and (3) that the defendant failed to furnish him suffi-
cient and necessary help to perform the duties required
of him.

The allegations of the petition were denied by the
answer and contributory negligence and assumed risk
were each affirmatively relied upon in separate para-
graphs thereof, these last two defenses being denied
by reply. As stated, the appellee had been working at
this ice factory for something near four years preceding
the accident, and while he was not constantly engaged
in elevating the ice as he was at the time of the acci-
dent, he had done this work on different occasions about
as frequently as any of the other employes, there being
none of them whose job was to elevate ice only. It is
shown, and not denied, that he was perfectly familiar,
not only with the method by which this was done, but
also with the platform, including its dimensions and the
space between the opening in it for the elevator and
its outer edge, which, as stated, had no banisters. On
this occasion he stood on the narrow strip of the plat-
form next to its outer edge, and when his hold on the
block of ice broke loose he fell over that edge of the
platform to the floor below. The ice could have been
unloaded from the elevator upon a portion of the plat-
form near to the aperture in the wall connecting with
the chute, which would have left it near to that opening
and also have afforded appellee a much larger space
on the platform to have done his work of removing the
ice off of the elevator; it being a much safer place for
him to have done his work; and is the place where the
proof shows it was most generally done, and where the
employes were instructed by those in charge of the plant
to do it. It is furthermore proven that to have had
banisters along this platform would have seriously
interfered with the business of appellant and the pur-
poses for which the platform was constructed. Appel-
lee was perfectly familiar with the work as well as with
the equipment of the plant. The danger incident to the
work, if any, was perfectly patent to him, it being plain
even to a careless observer. Under the evidence, he was
as familiar with the conditions as was the owner of the
factory. There is no reliance in the petition, nor any
evidence in the record to sustain it, that he had made
any complaint of the unsafety of the place, if any, nor
was there ever at any time any promise made to him

by anyone superior in authority that any such supposed
dangerous condition could be remedied. Under these
facts we see no room for invoking the "safe-place" doc-
trine in appellee's behalf.

Similar conditions have many times been before this
court wherein a recovery under the rule invoked was
denied. A very instructive case is that of Flaig v. The
Andrews Steel Co., 141 Ky. 391. Briefly stated, the
facts in that case were: That the plaintiff had been
working for only eight days in the factory of the steel
company, its business being that of manufacturing steel
and preparing it in bars for the use of its customers.
The method by which the steel would be cut into bars
was that a long piece of steel would be placed upon a
table and pushed or pulled the proper distance (owing
to the length desired), and with shears cut into bars of
the length desired. The plaintiff was located at the end
of the table with an iron hook and it was his duty to
keep these long pieces of steel in position and properly
adjusted for the use of the shears. Sometimes in run-
ning out to the end of these long bars there would be
pieces shorter than those being prepared, and these
would be put into a pit under the center of the table
prepared for that purpose. While plaintiff was attempt-
ing to adjust one of the long bars his hook slipped off
of it and he was precipitated into the pit, sustaining
the injuries for which he sued. This pit was unbanis-
tered and the place where plaintiff was compelled to do
his work was only about 3 feet 11 inches from the open-
ing of the pit. A recovery was sought upon precisely
the same grounds as are alleged by appellee in this case,
except that it was there claimed that inasmuch as the
plaintiff had worked only eight days he had not become
sufficiently aware of the danger to appreciate it, and
that he was therefore entitled to be instructed as to
such danger, which had not been done. He was not al-
lowed the benefit of this ground because as this court
found the situation was perfectly plain and manifest to
him. This court upon this point said:

"It will be readily seen that there really was noth-
ing in which appellee could have instructed appellant
that he did not already know. His years of experience
in the use of tools around blacksmith shops, his connec-
tion with rolling mills in the capacity of laborer or
blacksmith, and his general use of tools as a mechanic,

surely fitted him to understand the uses of the rod with which he was required to work. He was likewise familiar with the danger of injury that would result to him if he fell into the pit. His injury was simply the result of an accident due to no fault on the part of appellee to instruct him or to furnish him with tools reasonably safe and suitable for the work in which he was engaged."

Further on and upon the same point the court said:

"Appellant knew and understood that the pit was open and uncovered, and knew that it was only three and a half or four feet from the point where he was standing to its edge. He likewise knew that if he fell into it he was liable to be injured; and with this knowledge, without complaint, he set about to do the work assigned to him."

See also Williams v. L. & N. R. R. Co., 111 Ky. 822; Wallace v. S. C. & C. St. Ry. Co., 118 S. W. 962; Harper v. I. C. Ry. Co., 115 S. W. 198; Willson v. Chess & Wymond Co., 117 Ky. 567; Ohio Valley Ry. Co. v. Copley, 159 Ky. 38; Enos' Admx. v. Kentucky Distilleries & Warehouse Co. et al, 163 Ky. 555; Burch v. Louisville Car Wheel & Railway Supply Co., 146 Ky. 272; Glenn's Admr. v. C., N. O. & T. P. Ry. Co., 157 Ky. 453; Brucken v. Myers, 153 Ky. 274.

From these authorities it will be seen that the court is committed to the rule that if the place where the servant is required to do his work is hazardous and the plaintiff is thoroughly familiar with such condition, and without complaint continues to do his work, he assumes the risk and the master is not chargeable under such circumstances with liability for injuries resulting from the condition of the place.

As said in the case of Harper v. I. C. R. R. Co. and quoted with approval in the Flaig case, *supra:*

"The master is not an insurer. Every employe in every business must assume some risks and dangers that are incident to it or that may happen even with the utmost care on the part of the employer to prevent or guard against them. Liability ought not to be fastened on the master for every injury that his servants may receive."

And in the case of Willson v. Chess & Wymond Co., *supra,* this court said:

"If the work is in and of itself dangerous, the master does not insure against such dangers. On the contrary, there is nothing better settled than that the servant assumes the ordinary risks and hazards incident to the character of his work."

This court again applied this rule in the Burch case, *supra*, wherein it said:

"The danger of being burned by the molten matter was one of the risks ordinarily and usually incident to the business. Appellee knew this fact and appreciated the danger. Therefore, he assumed the risk. Nor does the fact that appellee might have provided appellant with a chain, or erected an intervening wall, or adopted some other method of doing the work, affect the question, for it is well settled that where a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot recover merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury."

There is nothing shown in this case why we should relax this rule so thoroughly established in this state. To do so would not only require us to overrule a long line of decisions from this court, but would also result in placing a premium upon the negligence and carelessness of the servant, making the master an absolute insurer of his servant against all accidents. This would be unjust to the master as well as violative of all the rules of law upon the subject, and its tendency would be to create a laxness upon the part of the servant resulting in the more frequent happenings of accidents. We, therefore, conclude that appellee is not entitled to recover on the first ground relied upon.

The second ground urged by plaintiff as entitling him to recover may be disposed of by saying that there is no evidence to support it. The only tool which it was necessary for the appellee to use and the only one which he did use was a pair of hooks or tongs. Without resorting to what is known as "the simple tool doctrine," it can safely be said that the loosening of the hooks from the block of ice whereby the appellee was precipitated to the floor below is not shown to have resulted from any defect in the tool. On the contrary, it is shown by himself and all of the witnesses testifying in

the case that this was produced by the breaking of the ice at the place where the tongs or hooks had hold of it.

As to the third ground relied upon for recovery, it is shown by appellee himself that there is no extra help needed in the handling of the ice as was being done by him at the time of the accident. His testimony upon this point is: "Q. Did it take more than one man to handle the block? A. No. Q. During all the time you stayed there did you ever see more than one man handle the block of ice? A. No." There is no proof to the contrary in the record and indeed the point is not insisted upon by appellee's counsel in his brief. It might here be observed that this ice could have been taken from the elevator at the point near to the opening into the chute, which would have been perfectly safe, and this was the way by which it was generally done, and appellee himself concedes that this would have been the better mode to have removed it. Instead of doing this, he chose to unload it at a point near the edge of the unbanistered platform and on to a narrow space of it between its edge and the elevator. It is furthermore shown that this block of ice was newly manufactured and that the place on the block of ice where plaintiff placed his hooks was so near the edge as to make it most likely that the ice would pull loose at that point. This was clearly a negligent act on his part. The rule is well settled that where there is a safe and an unsafe way for a servant to perform his work and he selects the unsafe one, the master is not liable for injuries which might be sustained in consequence unless he directed the servant to do the work in that particular way, and the danger in doing it that way was not appreciated by the servant.

This rule being stated in the case of Brucken v. Myers, 153 Ky. 274, as follows:

"It is also true that if there is a safe and unsafe way of doing a thing, and the employe is acquainted with both methods, and voluntarily selects the unsafe one, when he could have selected the safe one, he cannot hold the master liable for an injury received, as he will be deemed to have voluntarily assumed the risk of adopting the dangerous in place of the safe method of doing his work."

Under the facts of this case and the law in this state, as we have shown, it is manifest that the appellee failed to show his right to recover.

At the close of the testimony for plaintiff, as well as at the close of all the testimony, the defendant offered and moved the court for a directed verdict in its behalf, which was overruled. With the record in the condition which we find it, we are constrained to hold that this motion should have been sustained.

The judgment is reversed, with directions to proceed in accordance with this opinion.