## Consolidation Coal Company v. Castle.

(Decided May 16, 1916.)

### Appeal from Johnson Circuit Court.

1. Master and Servant—Who Not Fellow Servants.—A brakeman and a motorman upon an electric car line in a mine, are not fellow-servants.
2. Master and Servant—Personal Injuries—When Servant Cannot Recover—Submission to Jury.—It is a general rule that where a plaintiff had the choice of a safe and an unsafe way to do his work, and he adopted the unsafe way and was injured in consequence thereof, he cannot recover; but if the evidence is conflicting as to whether the method employed by the plaintiff was a safe way, the case should be submitted to the jury.
3. Appeal and Error—When Verdict Will Not be Disturbed.—A recovery of $500.00 is not excessive for a motorman who was earning $2.00 a day, and had three fingers broken and mashed to such an extent that he could not straighten them, thereby reducing his working ability to one-fourth of his former ability.

O'REAR & WILLIAMS and FOGG & KIRK for appellant.

J. F. BAILEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

The appellee, Harrison Castle, was injured while employed as a brakeman on an electric motor car in appellant's mine, at Van Lear, Ky. The duties of his position required him to couple and uncouple the motor and the mine cars. The motorman in charge of the motor was Frank Hutton.

At the time Castle was injured, Hutton was hauling a load of mine timbers into the mine. The motor was behind the cars, which it pushed in front of it. While

proceeding in this way, the cars bumped against another motor which was standing on the track. Hutton left his position on the motor that was pushing the cars and went forward to the other motor against which the cars had bumped, and climbed into the seat and ordered Castle to couple the front motor to the cars.

The couplings were made with an iron link about a foot long, through which a bolt or coupling pin was dropped after the link had entered a slot or opening for that purpose in the car to be coupled. The couplings were not made automatically, but it was necessary and a part of the duty of the brakeman to hold and guide the link in its place with one hand, and attend to the coupling pin with the other. The motorman moved only upon the orders of the brakeman. And, it was the duty of the motorman to move his motor slowly in making the coupling so as not to endanger the brakeman who was making the coupling.

The petition alleges that Hutton, who was the agent of the company and superior in authority to Castle, and in charge of defendant's motor at the time of the injury, with gross and willful carelessness and negligence, kicked the motor and cars against one of the cars where plaintiff was at work, without giving him a signal or warning thereof, and caught plaintiff's hand between the cars and badly bruised and cut his hand and fingers; that as a result of his injury he was unable to work for more than six weeks; and that his hand and fingers are scarred and crooked, and their use greatly impaired.

Castle testified that when the loaded cars bumped against the idle motor, and after Hutton had taken his position in the front motor, as above indicated, he commanded Castle to couple it up or "he would mash his damn fingers off." Hutton denies this charge.

Castle recovered a verdict and judgment for $500.00, and the company appeals.

1. Appellant first insists that its motion for a peremptory instruction to find for it, should have been sustained, on the ground that Castle and Hutton were fellow-servants. In view of the decision of this court in the late case of Consolidation Coal Co. v. Baldridge, 166 Ky. 187, this question needs little or no discussion.

In that case Baldridge was a brakeman on a coal mine train in this appellant's mine, and the only other member of the crew was a motorman. While making an

outbound trip the motor collided with an empty coal car which it left on the main track when making the inbound trip. Baldridge was injured in the collision; and, to his suit for damages the company interposed the defense that the brakeman and the motorman were fellow-servants.

It will be seen, therefore, that the question as to whether the motorman and Baldridge, the brakeman, were fellow-servants, is the same question that we now have before us. But, in holding that Baldridge and the motorman were not fellow-servants, this court said:

"Appellant asks for a reversal because, as it says, the brakeman and motorman were fellow-servants, and, therefore, the court erred in refusing to give an instruction on that proposition. From the evidence, we understand that in making the trips on trains it was the duty of the brakeman to couple or uncouple the cars and give to the motorman proper signals to 'go ahead' or 'back up.' When the trip was ready the brakeman would get aboard, either on the car or the motor, as he might feel the situation required, and the motorman would then take the train to destination. It is true, while making up the trip, the motorman responded to the brakeman's signals, but, from the evidence, it is clear that at all other times the motorman had sole charge and control of the train and in that regard was superior in authority to the brakeman. Although these employes were, in the manner described, associated together in the same work, yet, from the evidence, they were not in the same grade of employment. The relative duties of these employes was not unlike that of the ordinary railroad engineer and brakeman, and it has been often held that an engineer and brakeman are not fellow-servants although employed on the same train. Howard v. C. & O. R. R. Co., 28 Ky. L. R. 891; L. & N. R. R. Co. v. Moore, 83 Ky. 684.

It follows, therefore, that Castle and Hutton were not fellow-servants, and that the appellant's motion for a peremptory instruction upon that ground was properly overruled.

2. It is further insisted, however, that appellant's motion for a peremptory instruction should have been sustained because as it claims, the uncontradicted testimony shows that appellee was guilty of contributory negligence in adopting an unsafe way to do his work of

coupling, when he could have adopted a safe way, and that his contributory negligence in this respect was the cause of his injury.

In C. & O. Ry. Co. v. Conley, 136 Ky. 601, the court said:

"It is true the law of contributory negligence takes cognizance of the negligence of each of the actors. It does not measure or weigh the degree of negligence in each as by comparison. It merely holds that when the plaintiff's own negligence so far contributed to the happening of the event that, if he had not been negligent, the other's negligence would have been harmless to him, then he ought not to recover."

Applying this general rule, it has been repeatedly held that where the plaintiff had the choice of a safe and unsafe way to do his work, and he adopted the unsafe way and was injured in consequence thereof, he cannot recover.

This rule was well stated in Smith v. Kestner & Hecht Co., 157 Ky. 282, as follows:

"There is another good reason why he should not recover if his duties required him, as we assume they did, to leave the place of safety where he was at work and go out in the building. He could have done this by walking on the planks he and Waller were standing on to shaft number three without danger and without assuming risk of any kind other than those that naturally belonged to the character of work he was engaged in.

"He thus had a safe way and unsafe way in which to do his work, and he adopted the unsafe one. He testifies that it would have been inconvenient and would have occasioned some delay in number three. Probably that may be so, but the planks that Waller and appellant were standing on were strong, sound planks, seventeen inches wide and within a foot or so of the wall, and he could have gone out this way without causing Waller more than a moment's delay, if it was necessary that Waller should have himself gotten on the floor of shaft number three to enable appellant to safely cross to the shaft.

"And when there is a safe and unsafe way in which an experienced servant may do the work which he is engaged to do, and he voluntarily and knowingly adopts the unsafe way and is injured as a consequence thereof, the master will not be liable." See also Brucken v.

Myers, 153 Ky. 274; Corbin Ice & Car Co. v. Ellison, 169 Ky. 257.

There are many other authorities to the same effect.

As above stated, the link with which the motor and cars were coupled was about a foot long, and was attached to the car; it fitted into a slot on the motor into which the pin was dropped from above, making the coupling complete.

When Castle's hand was caught, he had one hand on the pin ready to drop it into the slot when the link came in, and he had placed his other hand under the link to guide it into the slot on the motor. The link rested, in part, upon the top of the bumper; and Hutton testified that it was not necessary for a man to have his hand in a position to get it caught between the bumpers of the car and the motor in order to make that coupling; that Castle could have gotten hold of the link from the top, in which event his hand would not have been caught; and that it was not the ordinary, necessary, or customary way for a brakeman coupling a car to a motor to have his hand below the pin and between the bumper of the car and the motor.

It is further contended that another safe way for the plaintiff to have made this coupling was to straighten the link before the motor came back and not have his hand on it at all at the time the coupling was made.

On the other hand, Castle testified that he held the link with his left hand and took the pin with his right hand and dropped it in the link, and that this was the usual and ordinary way of making the coupling. And he further testified that he did not have time to straighten the link, because of the swiftness with which the motor backed upon him.

And Hutton, the motorman, testified that it was Castle's duty to see that the link was properly placed so as to make the coupling, and, if necessary, he should hold it in place or guide it with his hand.

The substance of the evidence is, that Castle might have made the coupling in a different way; and while he might have used a stick or some other instrument to lift the link and place and hold it in position, which would have been a safer but slower way to make the coupling than with his hands, there is proof that Castle made it in the usual and ordinary way.

The gist of appellee's case was the alleged carelessness and negligence of Hutton in backing the motor against the cars with such force and swiftness as to cause Castle's injury. If Castle attempted to make the coupling in the usual way and was injured by Hutton's negligence, appellant was liable; and, as there was evidence to sustain that view the case was properly submitted to the jury.

3. Finally, it is insisted that the verdict is excessive. It does not appear that appellee was attended by a physician in connection with this injury. He testified, however, that one finger was broken and nearly cut off; that another finger was badly mashed; that the end of a third finger was mashed and split open; that he could not now straighten his fingers; that at the time of his injury he was earning $2.00 a day, and that after the injury he could do only about one-fourth as much work as he did before the injury.

Under this proof, the verdict is not excessive. McHenry Coal Co. v. Robinson, 169 Ky. 125, and the cases there cited.

Judgment affirmed.