## Ohio Valley Railway Company v. Copley.

(Decided May 15, 1914.)

### Appeal from Boyd Circuit Court.

1. Master and Servant—Duty of Master to Furnish Reasonably Safe Tools.—While it is the duty of the master to use ordinary care to provide the servant with reasonably safe tools, material and place for the work required of him, the master will not be held liable for defects in tools, material or place of work, that no sort of inspection on his part could have discovered.

2. Master and Servant—"Simple Tool" Rule.—The rule which requires a master to exercise ordinary care to provide reasonably safe tools and appliances for his servant, has no application where the servant possesses ordinary intelligence and knowledge, and the tools and appliances furnished are of a simple nature, easily understood, and in which defects can be readily observed by such servant.

3. Master and Servant—Dangerous Machinery.—It is only in cases of machinery and appliances which are recognized as dangerous, that the employer owes the duty of looking out for the safety of the employee.

4. Master and Servant—Failure of Servant to Object to Using Unsafe Tool.—When the servant, having knowledge that a simple tool furnished by the master is unsafe and dangerous, continues to use the same without objection or protest, he assumes the risk of injury incident to its use.

GEORGE B. MARTIN for appellant.

DINKLE & PRITCHARD and D. M. HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellee Thomas Copley was injured while in the service of the appellant. He was engaged in stripping coal bumpers, which was effected by cutting the heads from the steel rivets that held sheets of steel in the form of a coal bumper. Two tools were used in this work, an ordinary sledge hammer and a steel T-rail cutter, the latter being a wedge shaped tool, sharp at one end, with a head on the other. The cutter was about two inches broad, and six or eight inches long, and had a handle from eighteen to twenty-four inches long, attached to the center of the cutter.

Copley was holding the sharp edge of the cutter against a rivet while his fellow-workman Walters struck it with the sledge; and while so engaged a small sliver of steel flew from the head of the cutter, striking

appellee on the back of the hand, and inflicting the injury for which he sued.

The case was based upon the allegation that the appellant was negligent in failing to furnish appellee with a steel cutter that was reasonably safe for the purpose for which it was used.

The answer contains a traverse, and pleads contributory negligence and assumed risk upon the part of the plaintiff.

The trial court having overruled appellant's motion for a peremptory instruction, the jury returned a verdict for $72.00 for lost time, and $128.00 for pain and suffering; and from a judgment based upon that verdict the defendant appeals.

There was no proof of contributory negligence.

Appellant's argument for a reversal is confined to the single proposition, that its motion for a peremptory instruction should have been sustained; and this contention assumes that the proof shows appellant was not negligent, and sustains the plea of assumed risk upon the part of the appellee.

The proof shows that the head of the steel cutter was burred or battered from use, and that it had a rough or ragged edge. Copley had never used a cutter or done work of this character before the occasion mentioned, and says he did not know it was unsafe or dangerous. When he and Walters were directed by the foreman to cut the rivets, Walters procured the cutter; and Copley testified he did not examine it until after the accident had happened, although he had been holding it in his hand and working with it for an hour or more.

Appellant had several cutters of this character, and the one used upon the occasion mentioned had been selected by Walters, who testified that the rough edges could have been removed by grinding the head on an emery stone.

Furthermore, Copley and Walters took turns in the work by which each would alternately hold the cutter, while the other used the sledge.

Neither Copley nor Walters made any complaint that the cutter was dangerous or unfit for the work, and there is no evidence that appellant's boss, or its other servants, had any intimation or suspicion that it was defective, beyond the fact that the top was battered, as above stated, if that be considered a defect.

Neither was it shown that appellant's boss directed Walters or Copley to take any particular cutter; on the contrary, Walters said he had taken the cutter from the other tools and had hidden it so he could retain it for his own work; and that he took it from its hiding-place the morning of the accident, after he had been directed to cut the rivets.

This case is quite similar to Langhorn, &c. v. Wiley, 28 Ky. L. R., 1186, 91 S. W., 255, where the plaintiff was injured while using a T-rail cutter of precisely the same pattern as that used by Copley, in splitting rock. While Wiley was holding the cutter and his fellow-laborer struck it with a sledge, a small piece of the cutter or sledge flew off and struck Wiley on the arm, severely injuring him. He brought his action upon the ground that the tools furnished by the defendant were not safe, proper or sufficient for the purpose, which fact, it was alleged, was not known to Wiley, but was known to the defendant.

In that case, however, this court directed a peremptory instruction for the defendant, and in doing so, it said:

"There is no evidence whatever in the record that either the sledge or T-rail cutter was defective, nor that any latent defects in them, if any, could by the exercise of ordinary care have been discovered. In fact, the testimony showed that the T-rail cutter was made of the best quality of steel, tempered for the purpose of using it in cutting steel rails, that the sledge was the kind in general use, and that the tools were practically new. Nor is there any evidence that these tools were not reasonably safe for the purpose in which they were being used. It is true that generally a small tool called a 'wedge' was used in splitting rock, and the 'T-rail cutter' for cutting rails, although the 'T-rail cutter' was sometimes used in place of the 'wedge' in splitting rock. The mere fact that the small 'wedge' was in more general use in splitting rock than the 'T-rail cutter,' is not in and of itself sufficient to hold the master liable, upon the ground that the tools furnished were not reasonably safe. The master is only obliged to furnish the servant with tools and appliances that are reasonably safe."

As authority for its ruling in the Wiley case, the court quoted as follows from Vissman v. Southern Railway Co., 28 Ky. L. R., 429, 89 S. W., 502, 2 L. R. A. (N. S.), 469:

"While this court has repeatedly announced, and yet holds to the rule, that it is the duty of the master to use ordinary care to provide the servant with reasonably safe tools, material and place for the work required of him, it has never been carried to the extent of holding him liable for defects in tools, material or place of work that no sort of inspection on his part could have discovered, for he is not bound to make the tools, material or place of work absolutely safe, or to insure those engaged in his service against the ordinary risk incident to the nature of the employment."

It is said, moreover, that this case comes within what is known as the "common" or "simple" tool rule, which exempts the master from liability where the instrument or tool, the defect in which is the cause of the injury, is of so simple a character that a person accustomed to its use cannot fail to appreciate the risks incident thereto.

The "common" tool rule may be said to be a relaxation of the general rule, which makes it the duty of a master to exercise reasonable care to provide reasonably safe tools and appliances for his servants, since the general rule has no application where the tools and appliances furnished are of a simple nature, easily understood, and in which the defects, if any, can be easily and readily observed by the servant.

The "common" tool rule was recognized by this court in Sterling Coal & Coke Co. v. Fork, 141 Ky., 41; 40 L. R. A. (N. S.), 837, where Fork's hand was injured by the imperfect handle of a shovel he was using in loading coal into a car. In holding that Fork could not recover, we said:

"We think we may properly put this case upon the ground that the tool furnished to appellee, as well as the use to which he put it, was so simple, and the place it was being used so free from danger that he should not be allowed to recover for the injury sustained, assuming that it was caused by the defect in the handle. It must be recognized by every one that the rule of safe tools and appliances should not be extended to every tool and every appliance that is used by laborers and servants in the ordinary every-day affairs of life. There are few persons in employments of any kind who do not at some time or in some way use implements or tools (using these words in their broadest sense) in the performance of their duties and services. Some of these tools and

implements are of the simplest character and are used in the simplest way, and in the performance of labor or service that is free from danger. There is nothing complicated about many of them, and their nature is such that any person of ordinary intelligence can at once use them without instructions or assistance."

It is only in cases of machinery and appliances which are recognized as being in their nature dangerous to employees using them, or working in proximity to them, that the employer owes the duty to the employee of looking out for his safety. Lynn v. Glucose Sugar Refining Co., 128 Ia., 501.

Many cases in which the simple tool rule has been applied are collected in the note to Parker v. W. C. Wood Lumber Co. (Miss.), 40 L. R. A. (N. S.), 833.

See also, Mercer v. Atlantic Coast Line R. R. Co., 154 N. C., 399; Ann. Cas., 1912A, 1002 with note.

The same rule has been applied and recovery denied where the servant has been injured by slivers of iron or steel flying from hammers, chisels, punches, &c.

See Lynn v. Glucose Sugar Ref. Co., 128 Iowa, 501, 104 N. W., 577 (hammer); Atchison, T. & S. F. R. Co., v. Weikal, 73 Kan., 763, 84 Pac., 720 (chisel); Gillaspie v United Iron Works, 76 Kan., 70, 90 Pac., 760 ("set" used as buffer); Golden v. Ellis, 104 Me., 177, 71 Atl., 649 (hammer); Dompier v. Lewis, 131 Mich., 144, 91 N. W., 152 (hammer); Koschman v. Ash, 98 Minn., 312, 116 Am. St. Rep., 373, 108 N. W., 514 (common sledge or hammer); Rahm v. Chicago, R. I. & P. R. Co., 129 Mo., App., 679, 108 S. W., 570 (bolt-punch hammer); Campbell v. T. A. Gillespie Co., 69 N. J. L., 279, 55 Atl., 276 (driftpin); Demato v. Hudson County Gas Co., 74 N. J. L., 793, 67 Atl., 28 (chisel); Martin v. Highland Park Mfg. Co., 128 N. C., 264, 83 Am. St. Rep., 671, 38 S. E., 876 (hammer); Meyer v. Ladewig, 130 Wis., 566, 13 L. R. A. (N. S.), 684, 110 N. W., 419 (hammer); L'Houx v. Union Construction Co. (Me.), 30 L. R. A. (N. S.), 800, (hammer and chisel).

In Duncan v. Gernert Bros. Lumber Co., 27 Ky. L. R., 1039, 87 S. W., 762, Duncan, the employee, sought to recover damages for an injury received in falling from a ladder, which was too short to enable him to do his work while standing upon the ladder. That fact, however, being clearly apparent to Duncan, this court held he could not recover.

See also Jones v. L. & N. R. R. Co., 95 Ky., 576, and Flaig v. The Andrews Steel Co., 141 Ky., 397.

Narrowing the discussion to the particular cases in which a servant has been injured, in the use of chisels, punches and similar tools, we find many cases in which the "simple" tool rule has been applied.

In Cincinnati, H. & D. R. R. Co. v. Phinney, 3 Ind. App., 546, it was held that the master was not liable for an injury to an experienced adult employee resulting from the flying of a sliver of iron from a punch when struck by a hammer, where its obviously battered condition rendered such occurrence probable.

In Fordyce v. Stafford, 57 Ark., 503, it was held that an experienced railroad man, who, while standing on a rail to steady it for a co-employee who was cutting it with a chisel, was struck by a splinter from the chisel or from the rail, and he had taken the chisel, which was obviously battered, with other tools, from the tool-box each morning, and returned it at night, and, by the exercise of ordinary care might have known of its condition, must be considered to have assumed the risk incident to its use.

In Baker v. Western & A. R. R. Co., 68 Ga., 699, it was held that the plaintiff could not recover for injuries caused by a small piece of iron or steel flying from the stroke of a heavy hammer upon a cleaver in cutting an iron rail, where he was aware that the cleaver was battered down and the edges of the hammer were broken and its surface uneven, although the cleaver was the only one he could find which was sharp enough to do the work.

Again, in Banks v. Schofield's Sons Co., 127 Ga., 667, it was held that a petition which alleged the defendant employed the plaintiff, who was 38 years of age, to dress off the rough edges of the iron on the truck frame of an engine, and furnished him, for that purpose, an iron chisel which was old, worn, and much too short for the work; that while plaintiff was using this chisel, a piece of steel flew therefrom and injured his eye; that the defendant was negligent in not furnishing the plaintiff with a safe tool with which to work; that the chisel was old and worn, and the plaintiff on account of his unskillfulness did not know of the danger of using the same in his work; and that the deficiency in the tool, and its weakness, and its liability to break in its condition, were known to the defendant, or could have been ascertained

or discovered by the use of ordinary care on its part, did not state a cause of action.

Again, in Heffren v. Northern Pacific R. R. Co., 45 Minn., 471, it was held that where the employees were accustomed to select their own tools from a supply kept by the employer, who kept a tool repairer in the shops whose business it was to repair the tools, the employer was not liable for an injury caused by the breaking of a piece of steel from the head of a side set which plaintiff and a fellow-workman were using in cutting off the heads of rivets, where the battered condition of the side set was the ordinary result of use; that it was immaterial that the selection of the tool was made by the employee with whom plaintiff was working, where the defective condition was apparent to the plaintiff; and that, although plaintiff was about 17 years of age, his experience of two years and a half in various employments about the shop was sufficient to warrant the court in holding that he assumed the risk.

And, in Buchanan v. Rome W. & O. R. Co., 10 N. Y. S. R., 326, it was held that an employee who used a chisel, knowing its head to be battered, assumed the risk arising from its use in its dangerous condition.

See also, Houston & T. C. R. Co. v. Conrad, 62 Texas, 627.

The reason for exempting the master from liability in cases of this character rests upon the fact well known to everybody, that deterioration being the necessary result of using a chisel, punch, cutter and similar tools for the purposes for which they are intended, the duty of inspection and repair in such a case is incidental to the duty of the employees who use the tool in their common employment. The ordinary use of such a tool necessarily batters it, although that fact does not necessarily make it an unsafe tool.

And, in the case at bar, clearly appellant is not responsible to the appellee for the failure of Waters, his fellow-servant, to perform the duty of inspection when he selected the cutter from among the other tools. Demato v. Hudson County Gas Co., (N. J.) 67 Atl., 28.

From this uniform line of decisions, it is apparent that the case before us comes within the "simple" tool rule above announced, and that appellant's motion for a peremptory instruction should have been sustained.

We do not mean to say, however, that the "simple" tool rule would apply in a case where the tool is defec-

tive, and that fact is known to the master and unknown to the servant. In such a case the master would be liable. It was expressly so held in Mergenthaler-Horton Basket Co., v. Taylor, 28 Ky. L. R., 924, 90 S. W., 968, where a servant was injured while using a defective monkey-wrench, a simple tool, the defect thereof, however, being known to the master and not known to the servant. See also, Martin v. Highland Park Mfg. Co., 128 N. C., 264; 83 Am. St. Rep., 671.

Likewise, in Crilley v. New Amsterdam Gas Co., 106 App. Div., 127, 94 N. Y. Supp., 102, where the evidence showed that plaintiff was injured by being struck in the eye by a sliver from a chisel which he was using in cutting off the heads of rivets; that he had made complaint of the breaking of chisels theretofore furnished him, whereupon the foreman brought him the chisel which caused the injury, and assured him it was all right, and upon examination before using it, so far as plaintiff could discover, it appeared to be all right; that the cause of its breaking was the fact that it was made of coarse grain steel which was not suitable for the purpose on account of its tendency to sliver; and that the chisel was made by the defendant's blacksmith, of steel furnished by the defendant, it was held that the granting of a nonsuit was erroneous.

This ruling was based upon the fact that the master was liable, because, having manufactured the defective chisel, it necessarily knew, or could have known by the exercise of ordinary care, that the chisel was defective.

In the case at bar, however, Copley was 50 years old; had worked about three years in a coal mine; had worked also as a brakeman and a section hand upon a railroad; had worked upon a steam-boat; had used a drill in drilling stones; thus showing that he was a man well versed in the use of all ordinary tools, and with the experience that comes to a general utility man. There are no features in his case which take it out of the "simple" tool rule.

Judgment reversed.