# Chesapeake & Ohio Railway Company v. Shamblen.

(Decided November 18, 1915.)

## Appeal from Lewis Circuit Court.

1. Negligence—Master and Servant—Damages.—Where the engineer and conductor were guilty of negligence in leaving a car on the switch too close to the main track, and shortly afterwards the fireman was operating the same engine, by direction of the engineer, and in his place, while temporarily absent, and the fireman was injured by coming in contact with the car, not knowing it was there, the master is liable in damages.
2. Negligence—Injury Not Negligence of Fellow Servant.—Although the fireman at the time he was injured was performing the duties of the engineer and although he was injured as the result of the engineer's negligence, it was not the negligence of a fellow servant, for at the time of the negligent act the person injured was a fireman.
3. Negligence—Gross Negligence—Railroads.—It was gross negligence to leave the car on the switch too close to the main track. The fact that the court authorized a recovery for ordinary negligence is not reversible error in view of the moderate verdict and freedom of the record from other errors.

WORTHINGTON, COCHRAN & BROWNING for appellant.

ALLAN D. COLE for appellee.

OPINION OF THE COURT BY JUDGE NUNN.—Affirming.

Appellee was operating a locomotive engine of a freight train at Garrison, a station on appellant's railroad. Leaning out of the cab window observing his train his head was injured by striking against a freight car which had been left on a switch too close to the main track. In this action for damages he recovered $500. He was employed as a fireman, but when injured he was operating the engine in place of the engineer who had been called off temporarily.

Shortly after the train stopped at Garrison, his engineer, under direction of the conductor, placed a cut of cars on a switch, filling it completely, so that the one nearest the main track came within a foot of it. It is conceded that the engineer and conductor were guilty of negligence in leaving the car so close to the main track that the trains passing thereon would not have a safe clearance. The act of the conductor and en-

gineer in thus placing this car was deliberate. It was
not a mere failure to observe. They knew at the time
that they had filled the switch until there was not room
on it for another car, and that the one in question ex-
tended so close to the main line as to imperil the life of
trainmen thereon. They explain that they left the car so
close to the main track because there was not room on
the switch to get it further away. As said in the case of
L. & N. v. Earl's Admr., 94 Ky., 373:

"It was inexcusable negligence to leave the 'kicked
in' car so near to the main track that the engineer's
cab would barely pass it."

This switch was on the right of the main line, that
is, on the side where the engineer worked. The ap-
pellee was working as fireman on the other side of the
engine when the cars were placed. While he knew when
the cars were run in on the switch he did not know
that any of them had been left in dangerous proximity
to the main line. After the switch had been filled with
cars, as above stated, and while the train crew were
still engaged in switching in and about Garrison, the
engineer was temporarily called away and by his direc-
tion the fireman took his place. The engineer testifies
that at the time he left appellee, his fireman, in charge
of the engine "I told him that the cars were there,
(on the switch) that I had come by, and for him to look
out for those cars," and that appellee replied that he
knew they were there. Appellee denies that any such
warning was given, although he admits, as above stated,
that he knew that cars were on the switch, for he was
on the engine that had shoved them in there a short while
before, but he could not and did not see or know that
they were dangerously near the track.

In answer to a signal from the brakeman, appellee,
now operating the engine, pushed two cars ahead of it
on the main line to a point several hundred feet beyond
the switch in question. Cutting loose from these cars,
he was directed to return, that is, "back up" and again
pass the switch. On the return, with the train running
from 10 to 12 miles an hour, appellee leaned outside of
the cab to look backwards just as he was passing the
car in question when it struck him. A severe gash was
cut over his eye. It required three stitches to close the
wound. His ear was also involved or injured, due, in
all probability, according to the evidence of the com-

pany's physician, to infection from the wound through a tube leading from the frontal sinus to the ear drum. On this appeal, the company, although admitting the negligence of the conductor and engineer in so placing the car, and conceding such a conflict in the evidence on the question of whether he was warned by the engineer of its dangerous proximity, yet insists that the circumstances, independent of the warning, show that he did know, and that his failure to guard himself against the car was negligence *per se* on his part. The circumstances referred to are the facts that he was on the engine when the cars were placed on the switch, and that he had gone past the cars a few moments prior to the accident, and his testimony that as he started to ''back up'' his engine again to a point beyond the cars ''I looked up here and saw the cars on the track, but I couldn't tell whether they were on the track, or how about that.'' Manifestly, his testimony can not be construed as an admission of knowledge of the danger. When the cars were placed on the switch he was on the opposite side of the engine in the performance of his duties as fireman. He next passed the switch while acting as engineer, but did not see the cars. At that time, as he says, he was intent upon his duties in operating the engine, being the only man upon it, and running at from 10 to 12 miles an hour. This time in passing the cars, ''I was putting water in the boiler (with an injector). I never had my head out to notice about being clear.''

The master's negligence in this case is not in failing to provide a safe place to work. It is not like the case of posts, buildings, or obstructions set too close to the track by employees engaged in other lines of service. Nor is it like the case of a cut of cars left too close to the track by the crew of another engine or train. In cases of that character the doctrine of unsafe place would apply and the master would be liable if there was a failure to exercise ordinary care. But here the negligence is that of servants immediately superior to appellee engaged on the same train. Under these circumstances there can be no recovery by appellee unless the superior servants were guilty of gross negligence. The proximate cause of the injury, and the only negligence on which a recovery can be predicated is the gross negligence of his superior servants, the

conductor and engineer, in placing and leaving the car dangerously near the main track. But appellant argues that at the time appellee was injured the engineer and conductor were not superior servants, for he was, in fact, acting as engineer, and, therefore, a fellow-servant with them. It is appellant's contention that appellee's right to recover for the negligence of another servant is determined as of the time of the accident, and not as of the time of the performance of the negligent act. It is insisted that although the thing negligently done was the act of a superior servant, yet, when he was later injured as a result of that negligence, he had been elevated to a grade equal in service, and therefore his injury resulted from the negligence of a fellow-servant, and he cannot recover. In other words, although appellee was a fireman at the time the engineer and conductor negligently placed the cars which caused his injury, yet, since, at the time he received the injury, he himself was an engineer, he cannot recover because the negligent acts of the engineer were the acts of a fellow-servant. This reasoning is unsound and the authorities cited by appellant do not support it. Appellant relies upon Butler v. Townsend (N. Y.), 26 N. E., 1017, where the court said:

"The new servant takes the risk of any existing negligence of his fellow-servants as well as that which may thereafter occur."

But in that case, as held by the court, the negligent cause of the injury was the work of those who were fellow-servants not only when the negligent act was committed, but when the accident happened. L. & N. v. Moore, 83 Ky., 675, was where a brakeman was injured by the negligence of one employed as a fireman, but who at the time was permitted by the railroad to act as engineer. The railroad claimed that the brakeman could not recover because the injury was due to the negligence of the fireman, a fellow-servant of the brakeman, and that his temporary service as engineer when the negligent act was committed did not make it the negligence of an engineer and superior servant. The court held that the fireman was at the time and to all intents and purposes the engineer of the train and applied the rule of respondeat superior. In other words, the negligence was committed by one while acting as the engineer, a superior servant, just as in the case at bar. The negligent act was that of the engineer and con-

ductor who were at the time superior servants of the appellee. Appellant insists that the negligence was that of a fellow-servant for the further reason that according to the custom of doing switching work such as the crew were engaged in at Garrison, the members of the crew were, as the work might require, shifted from one position to another and all the members of the crew should, therefore, while engaged in such work, be treated as in a common employment. But the evidence does not show such a state of affairs. Each member of the crew had his special duties and no custom or rule is shown that could operate to place the crew upon the same grade of service, or to render them fellow-servants for the time being. It was customary for the fireman to relieve the engineer temporarily when directed by him, but in doing so he did not assume the risk of prior negligence of the engineer, his superior. The cases of Whitson v. American Bridge Co., 158 Ky., 1814, 166 S. W., 603; Sinclair's Admr. v. I. C. R. R., 140 Ky., 152, 130 S. W., 978, are relied upon by appellant in support of this proposition of temporary fellow-workers in a common service.

In the Whitson case Dempsey was the foreman of a crew of bridge carpenters, but at the time Whitson was injured Dempsey was doing the work of one of the carpenters, that is, he was assisting Whitson, another carpenter, to carry a cross tie. Dempsey stumbled and the tie was thrown against Whitson to his injury. It is conceded in that case that Dempsey while doing the work of a carpenter was a fellow-servant to the injured carpenter.

In the second case Sinclair, a member of a section crew, was killed by the alleged negligent act of Pruitt, the foreman. Although Pruitt was foreman of the crew he was at the time working as a member of the crew. The court in disposing of the case concluded that the fact that Pruitt was foreman was of no importance. The court held the accident to be one of the ordinary risks of the employment, and the fact that Pruitt, its foreman, happened at the time to be doing the work of one of the employees would not render the company liable. There is no analogy, however, in these cases to the one at bar. The fireman was not injured by the negligence of the engineer and conductor while they were, for the time being, performing some of his duties as fireman.

This brings us to appellant's complaint that the instructions of the court authorized a recovery for the ordinary negligence of servants superior to appellee in authority. The petition charges that the car in question was placed in such close proximity to the main track by the gross negligence and carelessness of appellant's agents and servants, but the instructions authorized a recovery for the ordinary negligence of those in charge of the train. This was error, for as we have already indicated, the plaintiff was not entitled to recover at all unless his superior servants were guilty of gross negligence. But appellant's substantial rights were not prejudiced by the error. The damages allowed are moderate in view of the injury sustained, and as to the character of negligence of which appellant's servants were guilty there can be, and there was, no question. There was no dispute about the facts, and from them it appears that the conductor and engineer were guilty of the grossest kind of negligence in leaving the car so close to the main track. There was a wanton and reckless disregard on their part of the safety of employees operating trains on the main track. There really were but two issues in the case, and they were whether the appellee knew or by the exercise of ordinary care could have known that the cars were so close to the track or whether the engineer, in fact, warned or notified him thereof. Both of these questions were fairly submitted to the jury. Although the instruction complained of erroneously permitted a recovery for ordinary negligence, yet, where admittedly and beyond dispute the facts show gross negligence and there is nothing in the record to indicate that appellant was prejudiced by the error, we do not feel authorized to remand the case.

In the recent case of Consolidation Coal Co. v. Baldridge, 166, Ky., 187, 179 S. W., 18, where we had under consideration a similar error, a reversal was refused, because in that case the negligence found by the jury was necessarily gross. Although the instructions submitted the case on the question of ordinary negligence, it was held that the error was not such as to justify a reversal because a reversible error "must affect the substantial rights of the appellant, and that it does so affect them must as clearly appear as the error itself." Civil Code, Sections 134, 335, 756.

For the reasons indicated, the judgment is affirmed.