## Louisville & Nashville Railroad Company v. Henry.

(Decided December 1, 1915.)

### Appeal from Bourbon Circuit Court.

1. Master and Servant—Assumption of Risk—Appliances.—A brakeman on a work train who was inexperienced in the manner of operating a plow which was being used to unload dirt and stone from flat cars and operated by means of a cable attached to the plow and the engine, and who had no control over the manner of doing the work, did not assume the risk if the work was undertaken to be done in an unskillful and negligent manner or without the necessary tools and appliances.

2. Trial—Instructions—How Considered.—Instructions given by a court on a trial must be considered as a whole; and where the error or defect in one instruction is cured by another there is no prejudicial error.

3. Damages—Personal Injuries—Impairment of Sense of Taste and Smell.—In a personal injury action an allegation that the plaintiff's skull was injured, his ear drum bursted, his neck strained, and his head otherwise bruised and injured, did not authorize the

introduction of evidence that his senses of taste and smell had been impaired as a reslult of the accident.

EMMETT M. DICKSON and BENJAMIN D. WARFIELD for appellant.

ROBERT B. FRANKLIN and TALBOTT & WHITLEY for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

In August, 1913, appellee, while employed as a brakeman by appellant on one of its work trains, was seriously injured and brought this action under the Federal Employers' Liability Act for damages. He recovered a judgment for $13,250 and appellant's motion for a new trial having been overruled, it has appealed.

As there must be a retrial of this case because of the admission of incompetent evidence, as will be hereafter shown, we will only state so much of the evidence as will enable us to pass upon the questions now presented.

The work train was made up of an engine and eight or nine flat cars and a caboose, and was engaged in hauling and dumping along the right of way the earth and stone with which the flat cars were loaded; the stone and dirt were unloaded from the flat cars by the use of an instrument called a plow which was connected with the engine by a wire rope or cable running from the plow over the flat cars to the engine; at a point where it was desired to unload the stone and dirt from a car, the engine was disconnected from the cars, the cars blocked, whereupon the engine would move and by means of the cable pull the plow across the flat car thereby throwing the dirt and stone off.

At the time of the injury the plow had been in operation on the work train only about two weeks, and previous to the injury had only been operated on a straight track, and appellee had had no other experience with it; but at the time of the injury the train was stopped on a sharp curve, the inside of the curve being on the east; appellant's road is double-tracked at this point and the other track was about twenty feet eastward of the track upon which the work train was operating; the cable ran from the plow over the other flat cars to the engine, there being on each side of the flat cars short standards extending from ten to twenty inches above the floor of the cars. At the first attempt to operate the plow on the curve by pulling this cable with the engine, the cable was

placed on the inside of the standards on the eastern side of the flat cars, or on the inside of the curve, and while the cable remained on the inside of the standards and did not fly off, the pressure was so great on the standards as to overturn one of the flat cars. Deeming this plan of operating the plow impracticable because of the overturning of the car, at the next attempt the cable was run between the standards on the flat cars until it came to the car next to the engine when it was run along the outside of that car, on the western or outside of the curve, the flat cars at the time being loaded with earth and stone three or three and one-half feet high.

Appellant's testimony is that he did not know how the cable was being operated, and that he was directed by the conductor to station himself near the engine on the inside of the curve where he could relay signals from the conductor, who was back near the plow, to the engineer, and that while he was so relaying such signals, the engine started, the cable flew off of the cars and immediately assumed a straight line between the engine and the plow struck him with great force and knocked him down against an iron rail of the other track upon which he was standing and seriously injured him.

There is also evidence to the effect that in operating a plow attached to an engine by a cable on a sharp curve it is customary and proper to use pulleys or blocks to keep the cable from leaving the cars.

The negligence complained of is that the company failed to furnish the plaintiff a reasonably safe place in which to work, and required him to do the work in a manner not reasonably safe, and failed to furnish safe appliances with which to do the work, and the appellant, in addition to denying the negligence, pleaded contributory negligence and assumed risk.

Only three questions are necessary to be passed upon: (1) should the peremptory instruction asked for by appellant have been given because appellee assumed the risk as a matter of law? (2) alleged error in the instructions, and (3) the admission of incompetent evidence.

On the question of assumption of risk appellant's argument seems to be based upon a misconception of the evidence. In the first place, it is argued that appellee was bound to take notice of a natural law and must have known that when the engine started to pull on the cable, operating on the curve, that the cable would assume a

tangent and that any person of ordinary intelligence would have known this. But this argument is based upon the assumption that the cable at the time was not on the flat cars and was on the outside of the eastern standards.

In another part of the brief it is argued that appellee had full notice of the fact that a short time before the accident in an attempt to operate the plow by means of the cable on this curve a car had been overturned, and for that reason appellee should have known that just what happened was liable to occur; but upon that occasion the cable was on the inside of the eastern standards, and although it overturned the car, the cable did not leave the cars and assume a tangent as it did subsequently when it was run over the pile of dirt and stone and to the outside of the car next to the engine. The evidence of the plaintiff is that he was a brakeman; that he did not have charge of the work, that he was obeying orders; that the cable was placed on the western side of the car nearest the engine without his knowledge; that he was inexperiencd in the operation of the plow, having been with the work train for only about two weeks while it was being operated, and that during that time it had never been operated until that occasion on a curve. If the cable had been on the outside of the standards and on the inside of the curve and appellee had known this, there would be much force in appellant's argument that he must take notice of this natural law, and must have known that when the engine started the cable would assume a tangent.

Appellee also testifies that by reason of his inexperience that he did not know it was the proper or the customary way of operating such a plow and cable on a curve to use blocks and pulleys to prevent the cable from leaving the cars, and that no such blocks or pulleys were furnished or used upon that occasion.

The case of Sea Board Air Line Ry. Co. v. Horton, 233, U. S., 492, is relied on by appellant as authority upon the question of assumption of risk; but an examination of that case will disclose that there is no analogy. There the engineer, who was in full and complete charge of the engine, continued to run the same with a defective water gauge, the condition of which he was fully aware of and knew the risk of continuing to use it. The

court in that case in defining the risks which an employe assumes and those which he does not assume, said:

"Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this court."

Certainly it is not naturally incident to the occupation of a brakeman who has no control of the work that he should assume the risk of his master undertaking to do the work in an unskillful and negligent manner and without the necessary tools and appliances.

The facts of this case do not bring it within the rule laid down in the case of Wilson v. Chess & Wymond Co., 117 Ky., 567; in this case appellee had no control over the manner of doing the work, he had had no experience in the kind of work, and did not know that it was being attempted in an improper way or what was the correct way to do it.

Under the facts of this case appellee did not assume, as a matter of law, the risk.

Instruction No. 1 is objected to by appellant because it authorized a recovery for the plaintiff if the jury believed that appellee did not know the appliances were not reasonably safe or suited for the purpose for which they were being used, and because the instruction left out any reference to the question whether the danger was so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated it. The instruction was certainly defective in the respect indicated, but the court in another instruction on the assumption of risk embraced this idea and cured the defect. The instructions in all other respects seem to have

fairly submitted the issues; in fact there is no serious complaint of them.

The plaintiff in his petition in reciting the injuries resulting from the accident undertakes to give them in detail, and recited that his body was bruised, his ribs fractured, his skull caved in, one of his ear drums bursted, the back of his skull fractured, his spinal cord and nervous system injured, the joints of his neck strained, the large bone in his right leg bruised, and that his eyes and ears were injured so as to permanently injure his eyesight and hearing, and his body and head otherwise bruised and injured. Under these allegations the lower court permitted the plaintiff to prove that his senses of *taste* and *smell* had been greatly impaired as a result of the accident; that he could not smell anything, and that everything tasted alike, and the medical experts were also allowed to give testimony along these lines.

It is earnestly insisted for appellant that under the state of the pleadings this evidence was incompetent, and that its admission resulted in a much larger verdict than would otherwise have been given.

This exact question was before this court in the case of Lou. Ry. Co. v. Gaugh, 133 Ky., 467, wherein the court said:

"The averments of the petition describing the injuries received by appellee covered every part of her person, including her head; and the argument is made that, under the allegation that her head was injured, appellee had the right to recover for injury, not only to the head, strictly speaking, but to any of the organs of sense located in the head, as, to illustrate, seeing or hearing. A charge that a person has received injuries on or about the head will ordinarily only convey notice to the adverse party that a recovery will be sought for injuries to the head as that part of the body is ordinarily understood in speaking of it. The sense of hearing, as well as the sense of sight, is located in the head; but if a person should say that his head was injured, it would scarcely convey information that his hearing was diminished or his eyesight impaired. The purpose of a pleading is to give notice to the adverse party of the grounds upon which a recovery will be sought against him, and in personal injury cases the plaintiff should so describe his injuries as that the defendant, from an inspection of the pleading, may have reasonable notice of the injuries for which a

recovery will be sought, and thus be prepared to meet the evidence tendered by the plaintiff in support of his pleading."

Under this authority there can be no doubt that the evidence admitted in this case as to the loss of the senses of taste and smell was incompetent, and it is by no means improbable that the admission of this evidence materially increased the plaintiff's recovery. The loss of the power of taste and smell is to the average person a serious one, and we are unwilling to hold in this case that it was not prejudicial error to admit this evidence.

Other errors are complained of, but they are of such nature as that they will not likely occur upon another trial and for that reason they will not be noticed.

Upon a return of the case the plaintiff will be permitted to amend his pleadings if he so desires.

For the reason indicated the judgment is reversed, with directions to grant appellant a new trial and for further proceedings consistent herewith.