## Jones v. Southern Railway in Kentucky.

(Decided May 8, 1917.)

### Appeal from Anderson Circuit Court.

1.  Master and Servant—Assumption of Risk.—The defense of assumed risk is available to the defendant in suits brought under the Federal Employer's Liability Act in all cases except where the negligence producing the injury consists in the failure to observe some federal statute enacted in furtherance of the safety of the employee.

2.  Master and Servant—Assumption of Risk.—The doctrine of assumed risk includes all of those which are ordinarily and usually incident to the particular character of work and such as the employee has knowledge of and appreciates the danger, but, notwithstanding such knowledge and appreciation, he undertakes the work.

3.  Master and Servant—Fellow Servant.—When a foreman undertakes to and does perform the same character of work in which the employee is engaged, such foreman for the time being becomes a fellow servant of the employee with whom he is engaged in prosecuting the work.

4. Master and Servant—Assumption of Risk.—Where particles of earth, rock or cinders had lodged in a crosstie and had become covered with ice produced by a freezing rain, and a particle of the ice or some of the substances flew into the plaintiff's eye when a pick was stuck into the crosstie, the injury thus produced is one of the ordinary risks incident to such character of work and was assumed by the servant in entering and remaining in the employment.

EDWARDS, OGDEN & PEAK and LILLARD CARTER for appellant.

HUMPHREY, MIDDLETON & HUMPHREY and WILLIS, TODD & BOND for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant (plaintiff below), a colored man over fifty years of age, was at work for appellee (defendant below) as a section hand, when he sustained the injuries to recover damages for which he brought this suit. He had been engaged in that work for more than twelve years, and was therefore an experienced hand, not only as to the way and method by which that character of work should be done, but was also familiar with the dangers attendant upon his duties in prosecuting it.

A part of the road which was under the control of plaintiff's crew, of which one Thomas was foreman, was in the village of Tyrone, Kentucky, and at which place a spur track leads off from the main line to Ripy Brothers' distillery. A wrecked freight train on one Saturday evening tore up the track at the point where the spur left it, and likewise damaged the spur track. The main line was repaired by placing under it new ties in place of the destroyed ones produced by the wreck, which was done on Sunday, and on that day some new ties had been placed under the spur track running to the distillery. In placing the ties under the tracks there was necessarily thrown upon them in making excavations some dirt and cinders, but the spur track was not lined up until the following Monday, which was January 25, 1915. After the ties had been placed, and before the work of lining up the track had commenced on Monday, there came a rain and sleet which formed a crust over the dirt and cinders that had been thrown upon the ties when they were placed under the track. In order to line up the rails, which was the work at which plaintiff was engaged when he received the injuries, it was necessary to

nip the ties, which means to prize them up to the rail, and also to pull the rail to a point on the ties where it will be of the proper gauge and where it may be spiked to the ties. The crew, while engaged in this business, was divided into pairs, and the plaintiff and the section boss, who was performing the duties of a section hand at the time, composed one pair of the workers, and they were engaged in lining up the track of the spur. The plaintiff was nipping the ties by placing a lever under their ends so as to prize them up to the rail, and his companion, the section boss, would stick a pick into the tie near the rail and prize down on the handle so as to pull the rail to its proper place. The section boss in making a stroke with his pick into one of the ties upon which there was ice, and perhaps cinders, as indicated, caused some of those substances to fly and a small portion of it struck the plaintiff in one of his eyes, resulting in the loss of its sight. Claiming that the accident to him was the result of the gross negligence and carelessness of the foreman, plaintiff brought this suit to recover from the defendant damages to the amount of $10,000.00.

The answer, in the first paragraph, denied the allegations of the petition as to negligence of any character, and in the second paragraph pleaded a compromise. In the third paragraph it relied upon contributory negligence of the plaintiff, and in a fourth paragraph it defended upon the ground that the injury was produced from a cause which the plaintiff assumed in entering the employment. Appropriate pleadings put in issue these defenses, but before trial an amended petition was filed, seeking a recovery under the Federal statute, known as the Employers' Liability Act, it being therein alleged that notwithstanding the defendant was a Kentucky corporation, it was at the time engaged in interstate commerce, as was also the plaintiff, when he received his injuries.

The amendment was denied, and after the evidence had been heard, the court announced that he did not believe the case was one coming within the purview of the Federal statute, whereupon a second amended petition was filed withdrawing the first one, and the court then gave a peremptory instruction to find for the defendant, which was done, and to reverse the judgment rendered upon that verdict the plaintiff prosecutes this appeal.

A number of questions are presented and urged upon us by counsel for both parties, but under the conclusion

we have reached we do not deem it necessary to discuss but one, which is that of assumed risk.

It is insisted by counsel for appellee that under the doctrine announced by this court in the cases of Sincliar v. I. C. R. R. Co., 140 Ky. 152; Whitson v. American Bridge Co., 158 Ky. 816; C. & O. Ry. Co. v. Shamblen, 166 Ky. 793; Burch v. Louisville Car Wheel and Railway Supply Company, 146 Ky. 272; Isaacs v. L. & N. R. R. Co., 167 Ky. 256; O'Bannon's Admr. v. L. & N. R. R. Co., 9 Ky. Law Reporter 706, and other like cases, that the section boss who was working with plaintiff at the time as a section hand was nothing more nor less than a fellow-servant with plaintiff on that occasion, and that the fellow-servant rule is included in and a part of the doctrine of assumed risk. For many purposes the fellow-servant rule is a part of and grows out of the assumed risk doctrine, and it may be conceded that those cases establish the fact that for the time being the plaintiff and the section boss were fellow-servants.

Another insistence which plaintiff's counsel make is that the court erred in holding that this case is not one coming within the purview of the Employers' Liability Act, which, if it did, would deprive the defendants of the defense that the injury was produced by the acts of a fellow-servant. This insistance raises a nice question under the facts found in the record, but we deem it unnecessary to determine the question thus raised, because if the injury complained of was the result of an assumed risk, it is equally efficacious, as a defense whether the suit be prosecuted under the Federal Employers' Liability Act, or under the remedy afforded by the laws of this state.

The Employers' Liability Act does not deprive the master of the defense of assumed risk, except where the injury is the result of a failure of the carrier to comply with some Federal statute enacted for the promotion of safety appliances. This is not only according to the terms of the statute itself, but it has been so held many times by this court, as well as the Supreme Court of the United States. L. & N. R. R. Co. v. Patrick, 167 Ky. 118; Glenn v. C., N. O. & T. P. Ry. Co., 157 Ky. 453; C. & O. Ry. Co. v. DeAtley, 159 Ky. 687; Truesdell v. C. & O. Ry. Co., idem, 718; L. H. & St. L. Ry. Co. v. Wright, 170 Ky. 230; Seaboard Air Line v. Horton, 233 U. S. 442, and L. & N. R. R. Co. v. DeAtley, 245 U. S. 310.

A general statement of the doctrine of assumed risk is that an employe assumes, when entering upon the employment of his master, all of the ordinary risks incident to his employment. It is stated and applied by this court under the varying facts appearing in the following cases other than those *supra*: Evans Chemical Works v. Ball, 159 Ky. 399; Louisville & Nashville Ry. Co. v. Henry, 167 Ky. 151; Gordon v. C. & O. Ry. Co., 166 Ky. 399; Concannon v. J. L. Strassell Paint & Roofing Co., 167 Ky. 141; Ohio Valley Ry. Co. v. Copley, 159 Ky. 38, and many others.

Some exceptions are found to this rule in its direct application, such as, if the servant is inexperienced and has no knowledge of the dangers incident to the employment, it is the duty of the master to inform him thereof, and when the servant makes objections to the work and complains to the master, but is informed by the latter that there is no danger, and the danger itself is not so apparent as to cause the servant to appreciate it, and, perhaps, others, but none of them exist in this case.

The proof in this case shows that the work at which the plaintiff was engaged was being done in the usual and ordinary way, but in the absence of such proof, it is a matter of universal knowledge that the work of section hands consists almost entirely in repairing and looking after the railroad track, and a very large portion of this work necessarily consists in placing ties in the track and under the rails, and involves the spiking of the rails to the ties at a place where they will be of the proper gauge. Necessarily, in doing this work, particles of earth, cinders or rocks will get upon the top of the ties, and over them, and to require all of this to be removed before the work of repairing the track should proceed would entail such a consumption of time as to make the repairing of railroad tracks not only expensive and impractical, but almost impossible of performance. Moreover, the record in this case makes it more probable than otherwise that the substance which flew into the plaintiff's eye was a piece of ice formed by the sleet accumulated on top of the ties. The railroad company was not responsible for the cold weather bringing about and producing such conditions, and to require it to move the ice from off the tie when it became necessary to handle it, as was being done in this case, would demand of it precautions looking to insuring its employes against all possible accidents, and

would carry the doctrine of responsibility of the master to an unreasonable extent.

It is insisted by counsel for appellant, however, that the section boss was warned by the plaintiff of the possible consequences of sticking the pick into the tie, and that he failed to heed the warning, and that by reason of this, and the fact that the person warned, although a fellow-workman at the time, was the section boss, the defendant is liable. We fail to recognize the soundness of this argument. At most it could amount to no more than if the section boss had directed another fellow-workman to drive the pick in the tie, under the circumstances. We have already seen that the risk was one which the plaintiff assumed, and it could be rendered no more dangerous if the act was done under the immediate directions of the foreman than if it had been done in his absence. Indeed, in the latter case, in a sense, it would be done under his directions, for then the servant would be carrying out the general orders of the foreman to do the work in the usual and ordinary way. But this contention of appellant's counsel, according to our view, operates against the claim of his client rather than for it, because there is no rule more firmly fixed in this state than the one which says that if the servant knows the danger, and appreciates it, it being obvious, and yet continues in the work, he assumes the risk. Burch v. Louisville Car Wheel & Ry. Supply Co., 146 Ky. 272; Isaacs v. L. & N. Ry. Co., 167 Ky. 256; O'Bannon's Admr. v. L. & N. R. R. Co., 9 Ky. Law Reporter 706; Ohio Valley Ry. Co. v. Copley, 159 Ky. 38; Truesdell v. C. & O. Ry. Co., *idem*, 718; Hoskins v. L. & N. Ry. Co., *idem*, 665; C., N. O. & T. P. Ry. Co. v. Guinn, 163 Ky. 157, and Evans Chemical Works v. B'all, 159 Ky. 399.

In the Burch case the injury was produced by a burn from molten iron. The danger was apparent, and it was determined by this court that the plaintiff assumed the risk, and upon the point now under consideration, said:

"Nor does the fact that appellee might have provided appellant with a chain, or erected an intervening wall, or adopted some other method of doing the work, affect the question, for it is well settled that where a servant, knowing the hazards of his employment as the business is conducted, is injured while engaged therein, he cannot recover merely on the ground that there was a safer mode in which the business might have been conducted, the adoption of which would have prevented the injury."

In the Isaacs case, *supra,* the plaintiff as a servant of the railroad company was engaged in unloading timbers. The weather was cold, the ground covered with snow, and the timbers had been made slick with ice which had formed upon them. The plaintiff objected not only to the character of work, but to the manner of its performance, but continued at it. In denying liability of the company for plaintiff's injuries, the court said:

"He (plaintiff) admits that he knew of the danger and made complaint to the foreman. With full knowledge of the conditions and of the danger therefrom, he continued to work without any assurance of safety, or assurance that the conditions would be remedied. It follows that the trial court did not err in sustaining the demurrer to the petition as amended."

In the O'Bannon case, *supra,* the injury was sustained by the servant falling from a freight train, the roof of which had been covered with ice produced by freezing weather. In denying the company's liability, this court said:

"The increased dangers of railroading arising from rain, snow and ice or the weather, are part of the ordinary risk incident to the business. To hold railroad companies liable to their employes on account of dangers arising from the elements would lead to the running of trains in good weather, only, thus seriously interfering with the travel and business of the company."

An examination of the other cases referred to will show that this court has uniformly adherred to the rule under consideration.

In the case of every accident it can be seen, after it has happened, that something could have been done to prevent it, but which something was not necessarily to be anticipated by the master, or should have been guarded against by precautionary action. It is such accidents that come within the purview of being usual, ordinary and incident to the business. Within this class might be included such cases as that to provide against them would produce such onerous burdens as to result in a practical suspension of the business.

Upon the whole case, we are convinced that the court did not err in sustaining the motion for the peremptory instruction offered by the defendant, and the judgment is affirmed.