## Cincinnati, New Orleans & Texas Pacific Railway Company v. Guinn.

(Decided February 25, 1915.)

### Appeal from Pulaski Circuit Court.

1. Master and Servant—Obvious Danger—Assumed Risk.—An inexperienced laborer who was injured by a sliver that flew from a hammer or anvil, both of which were defective and battered, while he was holding an iron rod a few feet from the anvil so that it might be hammered into shape by his foreman, should not be defeated in his right of recovery against the master on the ground that the danger was obvious and he assumed the risk.

2. Master and Servant—Obvious Danger—Assumed Risk.—Where an inexperienced servant is holding an iron rod so that it may be fashioned into shape by his foreman, who is striking it with a defective hammer on a defective anvil, he did not assume the risk of being injured by a sliver that flew from the anvil or hammer, although he may have seen the condition of both, as he had the right to rely on the good judgment of his foreman. Generally the doctrine of assumed risk and obvious danger is limited to states of case in which the servant is acting on his own

volition and not under the eye of and by the direction of some superior officer.

3. Master and Servant—Obvious Danger—Assumed Risk.—If a servant, experienced in the use of hammers and anvils, is voluntarily using defective ones, in the absence of the foreman, he may be considered to have assumed the risk of being injured by flying pieces of metal.

4. Master and Servant—Simple Tool Rule.—The simple tool rule will not be applied to a state of case in which it appears that a servant is injured by a piece of metal flying from defective implements, such as a hammer or anvil, when the foreman is present, using the hammer in striking a piece of hot iron for the purpose of putting it into, shape.

5. Master and Servant—Simple Tool Rule—Application of.—This rule is confined to cases in which the injured employe is himself actually using the tool that caused the injury complained of.

6. Appeal and Error—Prejudicial Error Must Exist to Authorize Reversal.—Section 756 of the code provides that no judgment shall be reversed or modified "except for an error to the prejudice of the substantial rights of the party complaining thereof," and following this code provision, we have uniformly refused to reverse for errors that do not prejudice the substantial rights of the appellant.

JOHN GALVIN and O. H. WADDLE & SONS for appellant.

ROBERT HARDING, EMMETT PURYEAR, JOHN W. RAWLINGS and R. B. WADDLE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This appeal is prosecuted from a judgment obtained by the appellee Guinn against the appellant railway company in an action in the Pulaski Circuit Court to recover damages for personal injuries. The injury complained of happened in this way: The appellee was a member of a working crew in charge of a foreman named Haynes. At the time of his injury appellee was holding an iron rod which, after being heated in a wood fire near-by, was placed on an anvil so that the ends might be formed into the desired shape by a heavy hammer which was being used by the foreman, Haynes. The rod was new, but the hammer and anvil were both in a very dilapidated condition, and while Haynes was striking the rod a small piece or sliver from either the anvil or hammer struck appellee in the right eye, destroying entirely the sight of that eye.

On this appeal it is urgently insisted that the request of the railway company for a directed verdict in the

trial court should have been sustained: first, because the case falls within the simple tool rule obtaining in this State; and, second, because if the anvil and hammer were unsafe and defective, this fact was so open and obvious that appellee could not escape knowledge of their condition and by continuing in the work assumed the risk of the accident.

Putting appellee's evidence in narrative form, he said that he did not know where the anvil and hammer came from and he had never used either of them or seen them used previous to the day he was injured. That his business was working in concrete, but his foreman had directed him to assist in connecting some iron rods, and he was holding the iron rod on the anvil after it had been heated, while his foreman was striking it with the hammer. That he had held two rods while links had been formed on the ends of them in the manner stated, and was holding the third when the accident happened. That he had never assisted in work of this kind before and did not know anything about the habit of chips flying from anvils or hammers; that the rod he was holding had just come from the factory and was free from scales or rust, and he knew that the sliver that hit him came from the hammer or anvil and not the rod because of its shape, color and general appearance. That the foreman had charge of the anvil and hammer and it was no part of his duty to make any examination of them, and he did not do so, although he was standing close enough to see their condition.

Jack Haynes, another employe, who was assisting in the work, said that the hammer "had some chips off; edge kind of chipped, and the anvil was chipped, too." That the tools had the appearance of having been used "a right smart and chipped up."

Pete Slaven, another employe, said: "The hammer was in pretty bad condition. It was chipped up at the side;" and that the anvil was in very bad condition, "all chipped up, too."

H. D. Haynes, the foreman in charge of these men, said that the hammer had been used considerably; "seemed that it had had rough use. Kind of beat up like old tools are. It was an old tool, ragged around the edge like they sometimes get, and showed considerable rough usage. The anvil had been abused some and chipped around the edges. Awkward work will do that."

Asked whose duty it was to inspect the anvil and hammer and see that they were in good condition to work with, he said: "I don't know. We never had any examination of tools that I know of. Q. How long had you known of them being in that condition—the hammer and anvil that you describe? A. I had only known them a short while. We had been using them about three weeks, I guess. Q. I will ask you whether or not, after you have used a hammer for some time, and it is chipped off, is that hammer regarded as safe or unsafe? A. That hammer there, you see the condition of it, was about like all we had, and I had been using it right along. Q. Did you regard this hammer as safe or unsafe? A. Never thought of it being dangerous until after this happened."

Ernest Simon, the claim agent for the company, said that appellee told him shortly after the accident that he did not know where the sliver came from that struck his eye. That he, the witness, had seen the anvil, and it looked like pieces had been chipped off on the sides, but that if he had to do any work with it he would not think it was dangerous.

These are the only witnesses who testified concerning the injury and the circumstances surrounding it, and it appears from this testimony that appellee was a common laborer whose duties did not require him to have charge of or inspect either the hammer or the anvil, and that both of these tools were in a defective, if not dangerous, condition, which condition was known to the foreman in charge of the work appellee was engaged in doing, but that the appellee did not know or appreciate the danger of working with or near these tools.

The duty imposed by law upon the master to exercise ordinary care to furnish reasonably safe appliances and implements for the servant to work with applies in all its vigor to this transaction, and we think it was clearly for the jury to say whether the railway company had discharged its duty in connection with these implements. Nor is it to be said that the danger in their use was so obvious as that an employe situated as appellee was should have quit his work until the tools were repaired or new ones supplied, or have called the attention of the foreman to the danger of using this hammer and anvil. His foreman, who was presumably an experienced man, was present and personally using the hammer. The foreman, of course, knew better than did appellee

whether it was unsafe or dangerous to use the hammer and anvil in the condition they were in, and if the foreman did not offer any suggestions or give any warning about their condition, the inexperienced employe like appellee had the right to infer that there would be no danger in using them.

The obvious danger rule sought here to be applied has, under the evidence, no place in this case. This rule in the law of master and servant has been frequently applied by this court in cases where the danger of doing a thing or using a thing was so open and plain that any person of ordinary intelligence and prudence could not avoid taking notice of it.

But it may also be observed that generally this doctrine has been limited to states of case in which the servant was acting on his own volition and not when he was doing something under the eye of and by the direction of some superior officer. Of course, the appellee may have seen that the hammer and the anvil were battered and worn, but he was not directly using either one of them and did not know the danger attending their use. His superior officer was immediately in charge of the work, and, in fact, actually engaged in doing the only work that required the use of either the anvil or hammer. Appellee and perhaps another employe were only holding the rods on the anvil. Under these circumstances this court has never, so far as we are advised, laid down any rule that would defeat the appellee in his right of recovery on the ground that the danger was obvious and he assumed the risk. If he had been experienced in the use of implements of this kind, or if he had himself been voluntarily using the hammer in the absence of the foreman, there would be good reason for applying the obvious danger doctrine. But that is not the case we have.

Strong reliance is placed by counsel for the railway company on the case of Ohio Valley Ry. Co. v. Copley, 159 Ky., 38, as sustaining the proposition that the simple tool rule should be applied to this case. In the Copley case it appears from the opinion that Copley was injured by a sliver that flew from the head of a steel T-rail cutter which was being struck with a hammer in the hands of a fellow-workman. But it further appears that both Copley and Walters, the other workman, alternately held the cutter and used the hammer, and that they were not directed by a superior to use any particular cutter,

nor was any foreman present when the work was being done. The court, however, although exonerating the company from liability in that case, was careful to say: "We do not mean to say, however, that the simple tool rule would apply in a case where the tool is defective, and that fact is known to the master and unknown to the servant. In such a case the master would be liable," citing with approval Mergenthaler-Horton Basket Co. v. Taylor, 28 Ky. L. R., 923, in which we said, in allowing a recovery in behalf of an employe who was injured by a defective monkey-wrench:

"It was the duty of appellant to know what tools were in use by its employe, and to see that they were in proper condition and reasonably safe for use. We are of opinion there was evidence conducing to prove that appellant did know, or by reasonable diligence might have known, that the monkey-wrench in question was being used about the saw by its servants, and also that it was not reasonably safe for such use. We think, too, that the evidence failed to show that appellee knew the defective condition of the wrench. There was no proof that he was told of it, or that he had seen the wrench used."

As said in Stirling Coal & Coke Co. v. Fork, 141 Ky., 40, another case in which the simple tool rule was applied: "It must, however, be admitted that it is difficult to draw the line at a place that will be fair and just to the servant and at the same time remove the application of the rule from the field of absurdity to which it might be extended. Every case that comes up involving defective appliances presents different facts, and with these varying states of fact the courts must deal in an effort to be sensible as well as just to both parties. In the solution of this question it would be hazardous as well as impracticable to attempt to set down any hard and fast standard by which to determine when the master is liable and when he is not."

And we will not attempt here to lay down any fixed rule on this subject, merely contenting ourselves with the statement that we are quite sure that the simple tool rule should not be extended to embrace a state of facts such as are presented in this case. To do this would virtually amount to an exoneration of the master, in a large class of cases, from the duty of furnishing reasonably safe implements and appliances, and also excuse him

when the servant had the right to depend upon the good judgment of his foreman and superior immediately engaged in superintending the work or actually taking a part in it.

Another reason why the simple tool rule should not be applied in this case is that appellee was not himself actually using the tool that caused the injury, and this rule has been confined by this court to cases in which the injured employe was himself actually using the tool that caused the injury complained of.

Some criticism is made of the instructions, as well as complaint of the failure to give certain offered instructions, but we think the court properly rejected the offered instructions and that the ones given were substantially correct and covered the issues in the case. The jury were told, in substance, that if they believed from the evidence that the foreman directed the plaintiff to hold the rod upon the anvil so that the foreman might strike it with his hammer, and that when the foreman struck the rod and anvil with his hammer a piece of the hammer or anvil was thereby caused to break off, striking plaintiff in the eye, and that the foreman knew that the hammer or anvil was in a defective condition, or by the use of ordinary care could have known of it, and that the appellee did not know of any such defect, if any there was, they should find for the plaintiff; otherwise, for the defendant.

They were further instructed that if they believed that the substance that struck plaintiff's eye came from the iron rod, they should find for the defendant.

Another ruling of the trial court complained of is this: It appears that counsel for the railway company, at the end of the introduction of the evidence on Saturday, asked for a postponement of the trial until Monday so that they might have opportunity to make an examination of the sliver that struck appellee in the eye, for the purpose of determining whether it came from the rod or the hammer or the anvil; but we do not think the court committed error in overruling this motion, because the evidence shows that this piece of metal had been in the actual possession of the railway company for more than a year before the trial took place. It, therefore, had more than ample time and opportunity to make any examination it desired before the trial commenced.

In this case, as in almost every other that comes before us, experienced and astute counsel find some act committed by the trial court that amounts to a technical error; but, keeping in mind the sensible rule laid down in Section 756 of the code, that no judgment shall "be reversed or modified except for an error to the prejudice of the substantial rights of the party complaining thereof," we have uniformly refused to reverse for errors that do not prejudice the substantial rights of the appellant. There are few cases in which, measured by strict standards, errors cannot be found, and if we should adopt the rule of reversing cases merely because some error appeared in the record, there would be few affirmed and the ends of justice and the rights of the parties would many times be defeated and the final disposition of cases unnecessarily delayed, although, in truth and in fact, the complaining party had a fair trial and without an error that affected his substantial rights.

After a careful consideration of this record, we are entirely satisfied that no error was committed by the trial court prejudicial to the substantial rights of the appellant, and the judgment is affirmed.