## Watkins v. Louisville & Nashville Railroad Company.

(Decided February 25, 1927.)

### Appeal from Breathitt Circuit Court.

1. Master and Servant—Petition Alleging Trackman's Injury from Steel Sliver from Hammer, but Not Alleging Railroad's Knowledge of Defect, Held Insufficient.—In trackman's action for injuries to eye caused by steel sliver,flying from a hammer wielded by the assistant foreman, petition alleging that injury was caused by negligence of railroad's agents and employees and by reason of defects in tools furnished, but not alleging that railroad knew, or by ordinary care could have known, of defect in hammer, held insufficient to state cause of action for defective appliances.

2. Master and Servant—Experienced Trackman, Knowing Hammer to be Defective, Held to Assume Risk of Injury by Steel Splinter. —Experienced trackman of mature age, injured in eye by splinter of steel flying from hammer wielded by assistant foreman in attempt to bring fish plate into position, held to assume the risk, in view of his knowledge that hammer was defective.

H. C. HYDEN for appellant.

O. H. POLLARD, C. S. LANDRUM, HUNT, NORTHCUTT & BUSH, ASHBY M. WARREN and WOODWARD, WARFIELD & HOBSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The appellant, whom we shall call the plaintiff, sought a judgment against the defendant for $2,500.00 for an injury to his right eye. At the close of his evidence, the court instructed the jury peremptorily to find for the defendant, and the plaintiff has appealed.

While working for the defendant in Breathitt county, on February 9, 1922, the plaintiff was struck above his right eye by a piece of steel which flew from a hammer which was being used by the defendant's assistant foreman, Ed. Starr. This sliver of steel doesn't seem to have entered the eyeball but to have entered the eyelid. Watkins continued to work the rest of the day but on the next morning went to see a doctor. The following day he reported for work and continued to work regularly until he quit working for the railroad company some time in June. Since then he has been engaged in the operation of a coal bank; has dug some coal; has cut wood; hauled

wood, and for two years has worked for the Union Charcoal & Chemical Company. He doesn't introduce the doctor who treated him or any other. It appears from the evidence that he is the only doctor who has ever examined this eye, and there is no very satisfactory evidence in the record that he received anything more than a temporary flesh wound. At the time of the injury, these parties were engaged in making some repairs on the track of defendant and were endeavoring to draw together the ends of two railroad rails for the purpose of putting on a fish plate. These plates are used for the purpose of joining the rails together. They are short pieces of steel, about 24 inches long, shaped to fit the rail, and have holes bored through them and there are corresponding holes bored through the rails. The plate had been attached to one of the rails, but the holes in the other rail did not come exactly opposite the holes in that end of the plate, and in order to bring them together, the plaintiff had thrust a pick through the hole in the plate into the hole in the rail, and was pulling on the pick in an effort to bring these holes into juxtaposition so as to enable another man who was working with them to put a bolt through and fasten them together. He had not accomplished this by pulling on the pick, and Starr had taken a hammer and was striking the pick for the purpose of making the plaintiff's effort more effective. While doing this, the piece of steel mentioned flew from the hammer and struck plaintiff. In the plaintiff's original petition he alleged that he was injured ''by the negligence and carelessness of the defendant and its officers and agents in charge of said work.'' He amended his petition and alleged he was injured by ''the negligence of the agents and employees of the defendant and by reason of defects of and insufficiency in its tools, appliances and equipment used by it and furnished by it to its employees and agents in the conduct of its business.'' There is not in either his original or amended petition, any allegation that the defendant knew or by the exercise of ordinary care, could have known of the alleged defective condition of this hammer. The plaintiff now claims this hammer was defective, and that his injury resulted from its defective condition, and that, therefore, the defendant should be responsible.

Plaintiff was an experienced trackman of mature age. He had done this kind of work many times, and

knew just how it was done. He knew the purpose for which the pick was thrust into these holes and he knew that Starr was going to strike the pick with the hammer, and knew his purpose in striking it. These men selected their own tools at the toolhouse, and the plaintiff would not say that he did not select the hammer from which the sliver flew that hurt him. He did not claim he did not know of its condition. On the contrary, he says, when asked about its condition: "It was an old hammer, and was cracking." He testified that they had some old hammers that they aimed to send off. He said: "We needed one, and when we needed one we always got it to use." He said that the reason they were using this old hammer was because it was all they had to use that day. He said he did not know who got the hammer and does not know who carried it down to where they were at work.

In the case of C. N. O. & T. P. R. Co. v. Burton, 184 Ky. 2, 211 S. W. 186, we described a hammer as one of the most simple tools. We cited there a vast number of cases, and we held that where a defect in a simple tool is as obvious to the servant as it is to the master, the risk of danger from its use is a risk assumed by the servant. In the case of C. & O. R. Co. v. Holbrook, 208 Ky. 488, 271 S. W. 583, we said:

> "It is true that the cutter in question was a simple tool and the defect obvious and if the injury has resulted to either the one that was holding the handle or the one striking, the recovery might be denied on the ground of assumed risk."

That is the case we have before us, and this doctrine is supported by authority cited in the Holbrook case.

In the case of C. N. O. & T. P. R. Co. v. Guinn, 163 Ky. 157, 173 S. W. 357, we said this of the simple tool doctrine:

> "It may also be observed that generally this doctrine has been limited to states of case in which the servant was acting on his own volition and not when he was doing something under the eye of and by the direction of some superior officer."

In that case, Guinn's injury resulted from the use of a defective hammer and defective anvil, but he was not directly using either the hammer or the anvil, and knew nothing of the condition of either. His superior officer

in charge of the work was actually engaged in doing the only work that required the use of either anvil or hammer; but in that case, we quoted this from the case of Sterling Coal & Coke Co. v. Fork, 141 Ky. 40, 131. S. W. 1030:

"It must, however, be admitted that it is difficult to draw the line at a place that will be fair and just to the servant and at the same time remove the application of the rule from the field of absurdity to which it might be extended. Every case that comes up involving defective appliances presents different facts, and with these varying states of fact the courts must deal in an effort to be sensible as well as just to both parties. In the solution of this question it would be hazardous as well as impracticable to attempt to set down any hard and fast standard by which to determine when the master is liable and when he is not."

It is upon this Guinn case that Watkins has placed his chief reliance. That case is easily · distinguishable from the case at bar. Guinn was not acustomed to doing the work at which he was engaged when injured, whereas, Watkins was an experienced trackman. He testified that he did not know his age, but admitted having a son 25 years old. He had often done the same kind of work as he was doing when he received his injury. It would appear that Guinn knew nothing of the danger of chips flying from anvils or hammers, and in that case the court said:

"If he had been experienced in the use of implements of this kind, or if he had himself been voluntarily using the hammer in the absence of the foreman, there would be good reason for applying the obvious danger doctrine."

It will be observed that the court in the Guinn case sets forth two circumstances under which there would be good reason for applying the obvious danger doctrine. One was where the workman himself was voluntarily using the hammer in the absence of the foreman and the other was where he was experienced in the use of implements of this kind. The evidence discloses that Watkins knew this hammer was defective, was an experienced workman, and had done this character of work often. He doesn't attempt to attribute this accident to any other

cause than the condition of the hammer. In the case of Royal Collieries Co. v. Wells, 210 Ky. 600, 276 S. W. 515, we said this:

> "In all industrial employments there are two classes of risks: (1) The ordinary risks inseparable from the business and not created by negligence of the master. (2) Those which are created by the master's negligence, or the extraordinary risks. The ordinary risks the servant assumes, but the extraordinary risks, or those created by the master's negligence, he does not assume, unless he knows of the defect and danger therefrom, or the defect and danger are so obvious that an ordinarily prudent person would, under the circumstances, have observed and appreciated them. Southern Planing Mill v. Hebel, 167 Ky. 165, 180 S. W. 63. No recovery can be had of the master for injury resulting to a mature and experienced servant, from his deliberate and careless exposure of himself to a seen and known danger."

If the work in which Watkins was engaged was such that chips are liable to be thrown off from the hammer, no matter what its condition, then this was one of the ordinary risks of the business and comes under class (1). If the chip was thrown off because the hammer was defective and a solid hammer used as this one was, would not have thrown off a chip, then this is also a risk assumed by Watkins, because the evidence shows that he knew the hammer was defective. Therefore, both because his pleadings did not properly state a cause of action for defective appliances, and because Watkins clearly assumed the risk of injury from the use of the hammer, the peremptory instruction was right, and the judgment rendered on the verdict returned pursuant to that instruction is affirmed.