## Reed v. Nelson Creek Coal Company.

(Decided May 1, 1928.).

## Appeal from Muhlenberg Circuit Court.

1. Master and Servant.—In action by employee for injuries to eye, alleged to have resulted from electrician's negligence in attempting to cut rivets from chain with dull chisel from which piece of steel flew out, it was not indispensable that plaintiff show by the evidence of a skilled mechanic that the dullness of the chisel rendered its use dangerous, but fact that chisel was broken and dull was evidence of its malleability.

2. Master and Servant.—In employee's action for injuries, alleged to have resulted from electrician's negligent use of broken and dull chisel in cutting rivet from chain with chisel and hammer, resulting in piece of steel striking employee's eye, issue of negligence and whether negligence was proximate cause of plaintiff's injuries held for jury, there being at least a scintilla of evidence from fact that piece of steel extracted from plaintiff's eye was about the size of a pinhead.

W. O. SMITH and LUKE TEAGUE for appellant.

WILKINS & SPARKS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

John Reed, an infant ·17 years of age, sued the Nelson Creek Coal Company for personal injuries. At the conclusion of appellant's evidence a directed verdict was given for the defendant. Plaintiff appeals. While within the terms of the statute it is admitted that the coal company has not elected to accept the provisions of the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.), hence the only question on this appeal is as to whether or not it was guilty of any negligence and, if so, was such negligence the proximate cause of plaintiff's injuries.

Plaintiff testified:

"That he was 16 years of age when injured; his occupation was that of a coal loader. On the afternoon of the injury the electrician for the company (Alfred) came into the room where he was at work and requested him to assist in repairing a cutting machine in an adjoining room, which he did. He was directed to hold a chain on the machine while Alfred

cut a rivet from it with a chisel and hammer. One corner of the chisel was broken and it was otherwise dulled, and Alfred stated 'that he ought to take it out and have it sharpened,' but nevertheless continued to use it for about half an hour, when plaintiff was struck in the eye by a piece of steel.

"Q.   What part of your left eye, and how was it hurt?   A.   The steel went into it.

"Q.   Now, did you know from whence the steel came?   A.   Yes, sir.

"Q.   Where did it come from, Johnny?   A. From the chisel when he cut the brad."

Witness was not asked as to how or why he thought the steel came from the chisel.

Fred Ballard, who was present, testified:

"Mr. Alfred said, 'This chisel is dull, but I will try to make out with it;' and while he was hammering this rivet I saw a piece fly and hit John Reed, . . . The chisel was very blunt and Alfred said, 'The chisel ought to be taken out, but maybe we can make out with it like it is.' "

Appellant's eye continued to pain him, and two days afterward Dr. Bailey examined him and made an X-ray exposure which showed a foreign substance in his eye. On the 4th of June this was removed by a surgical operation and proved to be a piece of steel about the size of a pinhead. The eye has continued to grow worse, and the doctor is of the opinion that it is now of no benefit to plaintiff, who also has been otherwise unfit for labor a greater part of the time. In giving the peremptory instruction the court seems to have been of the opinion that, although it was shown that the chisel was defective and that an injury resulted to the plaintiff, nevertheless a case was not made out because the plaintiff did not show by the evidence of a skilled mechanic that such defect in the chisel rendered its use dangerous, nor that such defect was the proximate cause of the injury. We think this too narrow a view. The fact that the chisel was broken and dull was evidence of its malleability. Without a cutting edge it must have been difficult to sever the rivet and required heavy blows. Naturally the edges on such an instrument, when forcibly driven against a rivet, would be more likely to crumble and fly than would the cutting edge of a sharp and hardened chisel. Further,

the steel extracted from appellant's eye is described as being about the size of a pinhead. Perhaps this indicates that it is a part of the chisel, as it would more likely crumble in pieces of the character described, than would the brad from which the chisel would presumably cut pieces in the nature of a sliver or chip. At any rate this would furnish a scintilla of evidence for the jury to determine whether it was negligence to use such tool, and if negligence, whether it was the proximate cause of the injury.

In C., N. O. & T. P. Ry. Co. v. Guinn, 163 Ky. 157, 173 S. W. 357, the facts showed that a workman was holding an iron rod upon an anvil which was being struck by the foreman. The rod was in good condition, but the anvil and sledge were both defective. A sliver from either the sledge or anvil struck the servant in the eye. There was no evidence at all upon the part of plaintiff as to danger in using these defective tools, while defendant's foreman testified that:

"The hammer had been used considerably; seemed that it had had rough use. Kind of beat up like old tools are. It was an old tool ragged around the edge like they sometimes get, and showed considerable rough usage. The anvil had been abused some and chipped around the edges. Awkward work will do that."

Asked whose duty it was to inspect the anvil and hammer to see they were in good condition to work with, he said:

"I don't know; we never had any examination of tools that I know of.

"Q. How long had you known of them being in that condition—the hammer and anvil that you describe? A. I had only known them a short while; we had been using them about three weeks I guess.

"Q. I will ask you whether or not after you have used a hammer for some time, and it is chipped off, is that hammer regarded as safe or unsafe? A. That hammer there, you see the condition of it, was about like all we had, and I had been using it right along.

"Q. Did you regard this hammer as safe or unsafe? A. Never thought of it being dangerous until after this happened."

The claim agent for defendant testified that appellant told him that he had seen the anvil and it looked as though pieces had been chipped off the sides, "but that if he had to do any work with it he would not think it was dangerous." There all the evidence of the skilled mechanics negatived the idea of the tool being dangerous; but nevertheless the court thought the evidence was sufficient on this point for a submission to the jury, and further discussed the simple tool doctrine, and held that as the plaintiff was not using the defective instrument the case was to be distinguished from the line of cases holding that an injured party cannot recover where the danger is obvious or a simple tool is being used, and concluded that it was for the jury to say whether he was guilty of contributory negligence. On the point involved the facts are similar, and it would seem that the rule laid down in the former case is decisive, except that here the defendant cannot rely on the defense of contributory negligence.

Wherefore the judgment is reversed and cause remanded for proceedings consistent with this opinion.